2020 IL App (1st) 172509-U

FIFTH DIVISION
Order filed: July 10, 2020

No. 1-17-2509

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Respondent-Appellee, | ) ) | Cook County |
| v. | ) | No. 96 CR 11562 (03) |
| | ) ) | |
| ROBERT JOHNSON, | ) ) | Honorable Thomas V. Gainer, Jr., |
| Petitioner-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court made impermissible credibility findings at the second stage of postconviction proceedings. Finding that the petitioner's postconviction petition set forth a claim of actual innocence based upon newly discovered evidence, we reversed the second stage dismissal of the petition and remanded the matter to the circuit court with direction to advance the petition for a third-stage evidentiary hearing.

¶ 2     The petitioner, Robert Johnson, appeals from the second-stage dismissal of his petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). For the reasons that follow, we reverse the second-stage dismissal of the petitioner's petition and remand the matter with directions to advance the petition for a third-stage evidentiary hearing.

¶ 3     The petitioner was charged along with his codefendants, Willie Daugherty, Fernando Gilbert and Jimmie Slaughter, with the first degree murder of Eddie Binion, home invasion, and armed robbery. At trial, Daugherty, testifying pursuant to a plea agreement with the State for a sentence of 15 years' imprisonment, testified that, on April 14, 1996, he, Gilbert, Slaughter, and the petitioner went to the apartment of Binion, a drug dealer, to steal money. Gilbert and the petitioner were wearing masks. When the door to the apartment opened, the petitioner rushed in, grabbed Binion, pointed a gun at his face, and asked where the money was. The petitioner and Gilbert then went into the bedroom with Binion. According to Daugherty, he then left the apartment. Following his arrest, Daugherty gave a statement to the police identifying the petitioner as the only one who was armed.

¶ 4     Chauna Wilkins testified that she went to Binion's apartment about 10:30 p.m. on April 14, 1996. She was in the apartment when Binion and Slaughter, who she knew as Shy, arrived and went to the kitchen. When she went to the kitchen, she saw a third man who was masked holding a gun to Binion's head. Binion told her to get the drug money. She went to another room followed by Binion, Slaughter, and the masked gunman where she handed over money. Another person entered the room and asked where the rest of the money was. The masked gunman kicked Binion in the face. Daugherty, who was not wearing a mask, then arrived and stood in the doorway of the room. She and Binion were taken to another room and told by the masked gunman to lie down. According to Wilkins, she did not recognize the masked gunman's voice. The masked gunman

then shot Binion in the head. Wilkins testified that she had previously met the petitioner and had heard him speak.

¶ 5    Following the trial, the jury found the petitioner guilty of the first degree murder of Eddie Binion, home invasion, and armed robbery. The trial court sentenced the petitioner to 55 years' imprisonment for murder and 25 years' imprisonment for each of the remaining convictions to be served concurrently with each other and consecutive to his murder sentence.

¶ 6    The petitioner appealed only his sentence. On July 22, 1999, this court affirmed the petitioner's sentence. *People v. Johnson*, 1-97-3100 (1999) (unpublished order under Supreme Court Rule 23).

¶ 7    On January 5, 2009, the petitioner filed a *pro se* postconviction petition, alleging actual innocence supported by the affidavits of Slaughter and Daugherty. Slaughter asserted that the petitioner was not involved in the crime. Daugherty asserted that the petitioner "took no part, nor was he present, nor did he have any knowledge of the crime being committed" and stated further that his trial testimony was untrue. The petitioner also raised a claim of ineffective assistance of trial counsel for failing to call his grandmother, Mary Robinson, as a witness at trial. Attached to the petition was Robinson's affidavit stating that, on April 14, 1996, at approximately 9:50 p.m., she sent the petitioner to a restaurant to buy food and he returned at approximately 10:00 p.m., at which time she asked him to go to a store for groceries. According to the affidavit, the petitioner returned at approximately 10:15 p.m., and she and the petitioner ate dinner at 10:20 or 10:30 p.m. Robinson averred that the petitioner went to bed at approximately 11:30 p.m. and, to the best of her knowledge, did not leave the house again until approximately 7:45 a.m. The affidavit states that Robinson was interviewed by the petitioner's trial attorney about her testimony, but was never called as a witness, although she was available and in court during the petitioner's trial. On

December 3, 2009, the circuit court advanced the petition for a second-stage proceeding under the Act.

¶ 8     On May 21, 2014, counsel for the petitioner filed an amended petition, alleging, in part, newly discovered evidence of the petitioner's innocence based upon the affidavits of Slaughter and Daugherty. Attached to the amended petition was a second affidavit from Slaughter, which states that the petitioner "took no part, nor was he present, and had no knowledge of the crime that was committed." Slaughter also averred that he "was not contacted by Robert Johnson's attorney to testify at trial." Further, he denied ever telling the police that the petitioner was involved. According to the affidavit, Slaughter entered into a plea agreement in December 1997.

¶ 9     On September 30, 2015, the State filed a motion to dismiss the petition. On June 27, 2017, the circuit court heard arguments on the State's motion and took the matter under advisement. On September 21, 2017, the circuit court entered a written order granting the State's motion and dismissing the petitioner's petition for postconviction relief. The circuit court found that the petitioner failed to make a substantial showing that his constitutional rights were violated or raise a free-standing claim of actual innocence.

¶ 10    As to the petitioner's claim of ineffective assistance of counsel, the circuit court found the claim to be untimely under section 122-1(c) of the Act (725 ILCS 5/122-1 *et seq.* (West 2018)). The circuit court held that the petitioner's initial postconviction was due by June 13, 2000, but was not filed until January 5, 2009, finding that there is no evidence of a sufficient explanation for the petitioner's failure to file his initial petition within the 6-month period set forth in section 122-1(c) of the Act. However, the petitioner has made no argument addressing the propriety of the trial court's determination that his claim of ineffective assistance of trial counsel was untimely. The

issue is, therefore, forfeited. Ill S. Ct. R. 341(h)(7) (eff. May 25, 2019); *Meyers v. Kissner*, 149 Ill.2d 1, 8 (1992).

¶ 11 On the petitioner's actual innocence claim, the circuit court analyzed both Daugherty's affidavit and Slaughter's affidavit. As to Daugherty's affidavit, the trial court found that it did not support a claim of actual innocence because: his "credibility is severely damaged by the fact that he identified petitioner within days of the shooting and testified consistently at trial with his pre-trial identification"; he never attested that he was present at the scene of the crime, establishing that he had personal knowledge of the events that transpired; and it is not so conclusive that it would change the result on retrial.

¶ 12 Addressing Slaughter's affidavit, the trial court found that it too failed to support petitioner's claim of actual innocence because it is not so conclusive that it would change the result on retrial. The trial court noted that Slaughter's assertion that the petitioner "took no part, nor was he present, and had no knowledge of the crime that was committed" is not newly discovered evidence as Slaughter was a known codefendant whose testimony could, through due diligence, have been secured before trial. The trial court also noted that Slaughter's affidavit does not provide any facts concerning his involvement in the crime that would serve as a basis of his personal knowledge concerning the participants in the crime and does not state that he was willing to testify on the petitioner's behalf at trial.

¶ 13 The petitioner argues that, when the factual assertions in the affidavits of Daugherty and Slaughter are taken as true, his petition and amended petition set forth a colorable claim of actual innocence that should not have been dismissed at the second stage of postconviction proceedings. Specifically, the petitioner contends that Daugherty's affidavit, stating that he "took no part, nor was he present, nor did he have any knowledge of the crime being committed," coupled with

Daugherty's recantation of his trial testimony identifying him as a participant in the crime, is newly discovered evidence that is relevant and probative of his innocence and is of such a conclusive character that it would probably change the result on retrial. He contends that the trial court made credibility determinations relating to the averments in Daugherty's affidavit that were inappropriate at a second-stage proceeding under the Act. As a consequence, the petitioner argues that the trial court's second-stage dismissal of his petition should be reversed and the matter remanded to the circuit court for a third-stage evidentiary hearing.

¶ 14    In support of the dismissal of the petitioner's petition at the second stage of postconviction proceedings, the State argues that the petition, amended petition, and supporting affidavits failed to make a substantial showing of actual innocence. In support of the argument, the State contends that Daugherty's affidavit is neither material, nor so conclusive that it would likely change the result on retrial "because it is false, factually deficiency, and held only impeachment value, not proof of exoneration or vindication." According to the State, Daugherty's affidavit is deficient because: it speaks to events on April 15, 1996, not April 14, 1996, the date upon which Binion was murdered; does not establish that he was present at the scene of the crime or otherwise establish his personal knowledge of who were the participants; and, at most, it "suggested a reasonable doubt of the petitioner's guilt, rather than 'total vindication or exoneration,' a much higher threshold." The State argues that "the trial court was not obliged to take the affidavit as true and was free to measure its veracity in light if [*sic*] Daugherty'[s] original trial testimony which rebutted his claim of petitioner's non-involvement."

¶ 15    The Act "provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9 (2009).

A postconviction proceeding consists of three phases. At the first stage, the circuit court may, within 90 days of the filing of a petition under the Act, dismiss a petition as frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). If a petition is not dismissed at the first stage, it advances to the second stage. Counsel is appointed to represent the defendant, if necessary (725 ILCS 5/122-4 (West 2016)), and the State is allowed to file responsive pleadings (725 ILCS 5/122-5 (West 2016)). "At this stage, the court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If no such showing is made, the petition is dismissed. If a substantial showing of a constitutional violation is set forth in the petition, then the proceeding proceeds to the third stage where an evidentiary hearing is conducted. *Id.*; 725 ILCS 5/122-6 (West 2016).

¶ 16 The determination of whether a postconviction petition sets forth a colorable claim of actual innocence is a question of law that we review *de novo*. *People v. Robinson*, 2020 IL 123849, ¶ 40. In conducting a review of a second-stage dismissal, we must liberally construe the allegations in the supporting affidavits in favor of the petitioner and, contrary to the State's assertion, must take those allegations as true unless rebutted by the record. *People v. Sanders*, 2016 IL 118123, ¶ 31; *People v. Barnslater*, 323 Ill. App. 3d 512, 519 (2007).

¶ 17 In order to state a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such a conclusive character that it would probably change the result on retrial. *Robinson*, 2020 IL 123849, ¶ 47; *People v. Edwards,* 2012 IL 111711, ¶ 32.

¶ 18 The State has not argued that Daugherty's affidavit is not newly discovered evidence, nor could it. Recantation of trial testimony is by its very nature newly discovered. The State does

argue, however, that Daugherty's affidavit is neither material nor so conclusive that it would likely change the result on retrial. According to the State, Daugherty's affidavit is not material because it: speaks to events on April 15, 1996, not April 14, 1996, the date upon which Binion was murdered; and does not establish that he was present at the scene of the crime, or otherwise establish his personal knowledge of who were the participants. We disagree.

¶ 19    Clearly, Daugherty's affidavit addresses the question of whether the petitioner was a participant in the armed robbery and murder of Binion. The fact that his affidavit gives a date one day after the event does not detract from its materiality. Daugherty's affidavit was notarized in 2003, seven years after Binion's murder. We believe that the passage of time could easily account for the one-day variance. As to Daugherty's presence at the scene of the crime and personal knowledge of the participants, the petitioner correctly points out that Wilkins, testifying as a State's witness at the petitioner's trial, placed Daugherty at the scene.

¶ 20    We also believe that the factual averments in Daugherty's affidavit are of such a conclusive character that they would probably change the result on retrial. To be of such a conclusive character, the evidence supporting a postconviction petition need not be entirely dispositive to probably change the result on retrial. *Robinson,* 2020 IL 123849, ¶ 48. "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.* If a trier of fact on a retrial believed Daugherty's testimony that the petitioner "took no part, nor was he present, nor did he have any knowledge of the crime being committed," that testimony would be dispositive, as Daugherty was the only witness at the petitioner's trial that linked him to the armed robbery and murder of Binion. No other witness testified that the petitioner was a participant in the crime, and there was no physical evidence connecting the petitioner to the crime.

¶ 21    At the second stage of a postconviction proceeding, the trial court may not make any credibility determinations concerning the allegations in a supporting affidavit. Credibility can only be resolved at a third-stage evidentiary hearing. *Sanders*, 2016 IL 118123, ¶ 42. In this case, the trial court's written order granting the State's second-stage motion to dismiss and dismissing the petition states: "As general rule, recantations are deemed highly unreliable and Daugherty's credibility is severely damaged by the fact that he identified petitioner within days of the shooting and testified consistently at trial with his pre-trial identification." Such a finding could only be made after a third-stage evidentiary hearing, not at the second stage of a postconviction proceeding.

¶ 22    Based on the foregoing analysis, we find that the petitioner's postconviction petition supported by Daugherty's affidavit set forth a colorable claim of actual innocence and the trial court erred in dismissing the petition at the second stage of the proceedings. And, as a consequence, we reverse the second-stage dismissal of the petitioner's postconviction petition and remand the matter to the circuit court with directions to advance the petition for a third-stage evidentiary hearing. Having so ordered, we need not address the petitioner's alternative argument that postconviction counsel failed to provide a reasonable level of assistance.

¶ 23    Reversed and remanded with directions.