# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

***People v. Edwards*, 2012 IL 111711**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WALTER EDWARDS, Appellant. |
| | |
| Docket No. | 111711 |
| | |
| Filed | April 19, 2012 |
| Rehearing denied | May 29, 2012 |
| | |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where newly discovered evidence of actual innocence was alleged in seeking leave to file successive postconviction petitions as to an accountability conviction for murder, leave denials were upheld where a codefendant-shooter's affidavit did not allege that petitioner had not been present, even though it claimed he took no part, and where no reason was given why alibi affiants who had refused to come forward earlier were not subpoenaed—no colorable claim. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. James Michael Obbish, Judge, presiding. |
| | |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Shawn O'Toole, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Annette Collins, Michele Grimaldi Stein and Tasha-Marie Kelly, Assistant State's Attorneys, of counsel), for the People. |
| | Karen L. Daniel, Joshua A. Tepfer and William Trevena, all of Chicago, and Rebecca Stephens, law student, for *amicus curiae* Center on Wrongful Convictions. |
| Justices | JUSTICE FREEMAN delivered the judgment of the court, with opinion. Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1    Petitioner, Walter Edwards, appeals from orders of the circuit court of Cook County denying him leave to file his third and fourth successive petitions for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2006)). The *pro se* petitions alleged actual innocence based on newly discovered evidence. The two cases were consolidated on appeal, and a divided panel of our appellate court affirmed. Nos. 1-07-0714, 1-08-1089 cons. (unpublished order under Supreme Court Rule 23). For the reasons set forth below, we affirm the judgment of the appellate court.

¶ 2                          I. BACKGROUND

¶ 3    In January 1999 the State charged petitioner and six other individuals[1] with the first degree murder of Jacqueline Bernaugh. Petitioner was tried separately by jury and was found guilty under a theory of accountability. He was sentenced to 28 years' imprisonment.

¶ 4    Petitioner admitted his involvement in the murder in a transcribed statement to police. He was 15 years old at the time. Prior to trial, petitioner moved unsuccessfully to suppress the statement, alleging it was not voluntary.

---

[1]Lawrence Coleman, Eddie Coleman, Kentrell Culbreath, Sam Taylor, Willie Richards and Octavius Sims were charged in the same indictment.

¶ 5 In the statement, which was published at trial, petitioner acknowledged he was a member of a street gang, the Renegade Vice Lords (Renegades), which was at war with a rival gang, the Mafia Insane Vice Lords (Mafias). Petitioner stated two of the Mafias killed his friend and fellow gang member, Elijah McLachlan. According to petitioner's statement, on November 29, 1998, following McLachlan's funeral, petitioner and other gang members went to the home of fellow gang member Lawrence Coleman and discussed a plan to avenge McLachlan by killing some of the Mafias. Petitioner stated he and a group of fellow Renegades went to a building on South Exchange Avenue in Chicago where one of the Mafias lived. Petitioner and other Renegades, including Eddie Coleman, who was armed with a shotgun, positioned themselves around the building and waited for one of the Mafias to emerge. As petitioner waited across the street, his companions, who were closer to the building, began shooting at a woman who was standing at a window inside the building. Petitioner stated he fired his gun in the air so his companions would know he fired his weapon.

¶ 6 An autopsy indicated Bernaugh died of a shotgun wound to the face.

¶ 7 Petitioner's statement was the only evidence at trial placing him at the scene of the crime. None of the State's eyewitnesses identified him as being there, and the State introduced no physical evidence linking him to the crime. Petitioner did not testify, and the defense rested without presenting evidence.

¶ 8 Petitioner's conviction and sentence were affirmed on direct appeal. *People v. Edwards*, No. 1-00-2332 (2001) (unpublished order under Supreme Court Rule 23). This court denied leave to appeal. *People v. Edwards*, 197 Ill. 2d 569 (2001) (table).

¶ 9 In July 2002 petitioner filed an initial *pro se* postconviction petition alleging his constitutional rights were violated when he was questioned outside the presence of his legal guardian or a youth officer. Petitioner also alleged the circuit court violated his right to due process when it denied his motion to suppress his statement. The circuit court dismissed the petition as frivolous and without merit, and the appellate court affirmed (*People v. Edwards*, No. 1-02-2563 (2003) (unpublished order under Supreme Court Rule 23)). This court denied leave to appeal. *People v. Edwards*, 209 Ill. 2d 588 (2004) (table). In January 2006 petitioner sought leave to file a successive *pro se* postconviction petition alleging, *inter alia*, actual innocence. Petitioner claimed he had newly discovered evidence, including an affidavit from codefendant Sam Taylor, showing petitioner was actually innocent of the murder. In that affidavit, Taylor named people who were present with him at Lawrence Coleman's home on November 29, 1998, after McLachlan's funeral. Petitioner's name was not mentioned. The circuit court denied leave to file the successive petition, finding petitioner failed to meet the cause-and-prejudice test set forth in section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2006)). The court also found the issues raised in the petition were frivolous and patently without merit. On appeal, the appellate court affirmed (*People v. Edwards*, No. 1-06-1986 (2008) (unpublished order under Supreme Court Rule 23)). This court denied leave to appeal. *People v. Edwards*, 229 Ill. 2d 638 (2008) (table).

¶ 10 In September 2006 petitioner sought leave to file his third postconviction petition. In this petition, as in the second, petitioner alleged actual innocence based on newly discovered

evidence. Attached to the petition was an affidavit from fellow Renegade Eddie Coleman, who stated that he, Willie Richards and "Little Mikey" were the shooters, and that petitioner, Lawrence Coleman, Kentrell Culbreath and Octavius Sims "had nothing to do with this shooting." Eddie explained he did not come forward earlier because "all I cared about was my freedom."[2] Also attached to the petition was an affidavit from Lawrence Coleman, who stated he received Eddie Coleman's affidavit on January 3, 2006, and gave a copy to petitioner on May 15, 2006, "because this new evidence I recieved [*sic*] pertained to [petitioner] also."

¶ 11        In a written order dated November 6, 2006, the circuit court denied leave to file the third petition, finding petitioner failed to satisfy the cause-and-prejudice test, and the issue raised in the petition was frivolous and patently without merit.[3] Petitioner filed a motion to reconsider, which the court also denied. Petitioner appealed, and the appeal was docketed under case No. 1-07-0714.

¶ 12        In January 2008 petitioner sought leave to file his fourth postconviction petition. Here again, as in petitioner's second and third petitions, he alleged actual innocence based on newly discovered evidence. Attached to the new petition were alibi affidavits from Dominique and Kathleen Coleman which, according to petitioner, established that he was with them in their residence "before, during, and after the shooting took place." In their affidavits, Dominique and Kathleen stated that petitioner went to their residence on November 29, 1998, after McLachlan's funeral, and he remained there until the next morning, November 30, when they all left and attended McLachlan's burial. In explaining why she did not come forward earlier, Dominique stated in her affidavit that she was a minor at the time of the incident, and her mother, Kathleen, forbade her from speaking out. Kathleen stated in her affidavit that she herself was afraid to get involved in the case, "being as serious as it was." Kathleen added that several of her family members were "already supposedly involved with this crime." She stated that although defense counsel contacted her numerous times to try to convince her to testify on petitioner's behalf, she refused to do so and refused to allow her daughter to do so. Kathleen also was uncooperative with investigators sent by petitioner since his incarceration.

¶ 13        Petitioner also argued in his petition that he was denied due process of law because his "illegally obtained" statement was admitted into evidence.

¶ 14        In a written order dated March 19, 2008, the circuit court denied leave to file the fourth postconviction petition, finding petitioner failed to satisfy the cause-and-prejudice test. Petitioner filed a notice of appeal, and the appeal was docketed under case No. 1-08-1089.

¶ 15        On appeal, case Nos. 1-07-0714 (the third postconviction petition) and 1-08-1089 (the

---

[2]As noted, Eddie Coleman was originally charged as a codefendant in this case. According to the State, the case against him was dismissed on June 7, 2000.

[3]The court also observed that the date on Eddie Coleman's affidavit had 2005 "crossed out" and 2006 "written in over it," and noted that petitioner filed his second postconviction petition on January 10, 2006.

fourth petition) were consolidated. The appellate court majority affirmed the circuit court's denial of leave to file the petitions, holding that petitioner failed to state a valid claim of actual innocence. Nos. 1-07-0714, 1-08-1089 cons. (unpublished order under Supreme Court Rule 23).

¶ 16    The majority noted *People v. Ortiz*, 235 Ill. 2d 319 (2009), which was decided while the instant case was pending before the appellate court. *Ortiz* held that "where a defendant sets forth a claim of actual innocence in a successive postconviction petition, the defendant is excused from showing cause and prejudice." *Id*. at 330. The appellate court majority concluded supplemental briefing on this issue was unnecessary. The majority's holding here was based, not on the cause-and-prejudice test, but rather on petitioner's failure "to state a claim of actual innocence." Nos. 1-07-0714, 1-08-1089 cons. (unpublished order under Supreme Court Rule 23). In the majority's view, "[t]he facts in this case would not warrant relief under *Ortiz*." *Id*.

¶ 17    The dissenting justice concluded the appellate court majority applied the wrong standard. The dissent would have applied the test for determining whether an initial postconviction petition may be summarily dismissed at the first stage of postconviction proceedings. Under that test, a petition may be dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). In the dissent's view, the petitions at issue here met this "low threshold." No. 1-07-0714 (unpublished order under Supreme Court Rule 23) (Gordon, J., dissenting).

¶ 18    Petitioner filed a petition for leave to appeal, which we allowed pursuant to Supreme Court Rules 315 (eff. Feb. 26, 2010) and 612 (eff. Sept. 1, 2006). In addition, we allowed the Center on Wrongful Convictions to file a brief *amicus curiae* pursuant to Supreme Court Rule 345 (eff. Sept. 20, 2010).

¶ 19                                II. ANALYSIS

¶ 20    The parties dispute the standard a petitioner claiming actual innocence must meet in seeking leave of court to initiate a successive postconviction proceeding under the Act.

¶ 21    We begin by noting that the Act provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. *People v. Eddmonds*, 143 Ill. 2d 501, 510 (1991). The Act is not a substitute for an appeal, but rather, is a collateral attack on a final judgment. *People v. Ruiz*, 132 Ill. 2d 1, 9 (1989). Thus, where a petitioner has previously taken an appeal from a judgment of conviction, the ensuing judgment of the reviewing court will bar, under the doctrine of *res judicata*, postconviction review of all issues actually decided by the reviewing court, and any other claims that could have been presented to the reviewing court will be deemed waived. *People v. Neal*, 142 Ill. 2d 140, 146 (1990); 725 ILCS 5/122-3 (West 2006) (specifically stating that "[a]ny claim *** not raised in the original or an amended petition is waived").

¶ 22    In light of the above, both the language of the Act and our own case law make clear that only one postconviction proceeding is contemplated under the Act. Nevertheless, this court has, in its case law, provided two bases upon which the bar against successive proceedings will be relaxed. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002) (citing *People v.*

*Flores*, 153 Ill. 2d 264, 278-79 (1992)); see also *People v. Szabo*, 186 Ill. 2d 19, 42-44 (1998) (Freeman, C.J., specially concurring, joined by Heiple, J.) (tracing history of relaxation of bar against successive postconviction proceedings). The first basis for relaxing the bar is when a petitioner can establish "cause and prejudice" for the failure to raise the claim earlier. *Pitsonbarger*, 205 Ill. 2d at 459. The General Assembly codified the cause-and-prejudice exception in section 122-1(f) of the Act, several years after our decision in *Pitsonbarger*.

¶ 23    The second basis by which the bar to successive postconviction proceedings may be relaxed is what is known as the "fundamental miscarriage of justice" exception. See *Pitsonbarger*, 205 Ill. 2d at 459. This exception is not unique to Illinois. The United States Supreme Court has stated that the exception serves "as an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty [citation], guaranteeing that the ends of justice will be served in full." (Internal quotation marks omitted.) *Szabo*, 186 Ill. 2d at 43 (Freeman, C.J., specially concurring, joined by Heiple, J.) (quoting *McCleskey v. Zant*, 499 U.S. 467, 495 (1991)). In order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, a petitioner must show actual innocence. See *Pitsonbarger*, 205 Ill. 2d at 459; *Sawyer v. Whitley*, 505 U.S. 333 (1992). Although this exception was not codified by the legislature, this court has reaffirmed its use in relaxing the bar against successive postconviction proceedings. See *People v. Ortiz*, 235 Ill. 2d 319 (2009) (acknowledging that leave of court to file a successive postconviction petition may be based on actual innocence alone).

¶ 24    As this court noted in *People v. Tidwell*, a petitioner seeking to institute a successive postconviction proceeding must first obtain "leave of court." *People v. Tidwell*, 236 Ill. 2d 150, 157 (2010). We also made clear in *Tidwell* that it is the petitioner's burden to obtain "leave" before further proceedings on his claims can follow. *Id.* To do so, we specifically acknowledged that "it is incumbent upon [a petitioner], by whatever means, to prompt the circuit court to consider whether 'leave' should be granted, and obtain a ruling on that question." *Id*. Defendant not only has the burden to obtain leave of court, but also "must submit enough in the way of documentation to allow a circuit court to make that determination." *Id*. at 161. This is so under either exception, cause and prejudice or actual innocence. With respect to those seeking to relax the bar against successive postconviction petitions on the basis of actual innocence, we hold today that leave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence. See *People v. Smith*, 341 Ill. App. 3d 530, 536 (2003) (citing *Sawyer*, 505 U.S. at 339 (actual innocence defined in context of federal *habeas* petitions as colorable claim of factual innocence)); *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) (*habeas* petitioner must initially come forward with new reliable evidence to support "colorable claim of actual innocence" under fundamental-miscarriage-of-justice exception). Stated differently, leave of court should be granted when the petitioner's supporting documentation raises the probability that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" (*Schlup v. Delo*, 513 U.S. 298, 327 (1995) (characterizing threshold standard as one of probability)).

¶ 25       Notwithstanding the above, petitioner argues we should evaluate his successive petitions under the same first-stage standard as an initial postconviction petition. He agrees with the dissenting justice below that when reviewing a successive petition, as when reviewing an initial petition, our task is simply to determine whether the petition is frivolous or patently without merit. See Nos. 1-07-0714, 1-08-1089 cons. (unpublished order under Supreme Court Rule 23) (Gordon, J., dissenting) (citing *People v. Williams*, 392 Ill. App. 3d 359, 365 (2009)). We disagree.

¶ 26       First, applying the frivolous or patently without merit standard here would render the "leave of court" language in section 122-1(f) superfluous. We have repeatedly held that statutes should be read as a whole and construed so that no part is rendered meaningless or superfluous. *E.g.*, *People v. Jones*, 214 Ill. 2d 187, 193 (2005).

¶ 27       Second, there is simply no basis in the statute for applying a first-stage analysis to a *successive* petition. Section 122-1(f), which governs successive petitions, describes the "leave of court" requirement but makes no mention of the frivolous or patently without merit standard, which is set forth in a separate provision, section 122-2.1(a)(2). The legislature was clearly aware of the frivolous or patently without merit language in 2004, when section 122-1(f) was added, and could have incorporated it into that section if it chose to do so. Where language is included in one section of a statute but omitted in another section of the same statute, we presume the legislature acted intentionally and purposely in the inclusion or exclusion. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 24. See also 2A Norman J. Singer & J.D. Shambie Singer, Sutherland on Statutory Construction § 46:5, at 228-29 (7th ed. 2007) ("where the legislature has employed a term in one place and excluded it in another, it should not be implied where excluded").

¶ 28       Also relevant to this issue is the legislative history of section 122-1(f). In discussing the first sentence of subsection (f), which provides that "[o]nly one petition may be filed by a petitioner under this Article without leave of the court," Senator Dillard stated: "This would make Illinois law consistent with *federal law* by letting a prisoner have one post-conviction petition without court permission while requiring that he or she formally seek leave of the court to file additional petitions." (Emphasis added.) 93d Ill. Gen. Assem., Senate Proceedings, April 4, 2003, at 138 (statements of Senator Dillard). These statements clearly support our conclusion that the "colorable claim of actual innocence" standard should apply, as opposed to the first-stage standard urged by petitioner. As noted, federal courts employ this same "colorable claim" formulation in the context of the fundamental-miscarriage-of-justice exception. See *Gomez*, 350 F.3d at 679.

¶ 29       Another reason for rejecting the first-stage standard is that treating successive petitions the same as initial petitions, as urged by petitioner and the dissent below, ignores the well-settled rule that successive postconviction actions are disfavored by Illinois courts. See *People v. Wright*, 189 Ill. 2d 1, 38 (1999) (Freeman, C.J., specially concurring, joined by McMorrow, J.).

¶ 30       Having established what a petitioner must set forth when seeking leave of court to file a successive petition on the basis of actual innocence, we turn to the standard of review,

which was briefed only minimally here. Generally, decisions granting or denying "leave of court" are reviewed for an abuse of discretion. See, *e.g.*, *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541, 547 (2003). However, as we have just noted, a trial court should deny leave only in cases where, as a matter of law, no colorable claim of actual innocence has been asserted. This suggests a *de novo* review. We need not decide this question in this case, however. Petitioner's claim of actual innocence here fails under either standard of review. His supporting documentation is too insufficient to justify further proceedings. We therefore leave this issue for another day and a more appropriate case.

¶ 31    In this case, petitioner claimed actual innocence when seeking leave of court to file his third and fourth successive postconviction petitions. As noted, the circuit court incorrectly relied on the cause-and-prejudice test in denying leave to file the successive petitions. See *Ortiz*, 235 Ill. 2d at 330. Thus, the question is whether petitioner set forth a colorable claim of actual innocence. In other words, did petitioner's request for leave of court and his supporting documentation raise the probability that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence? Because we conclude that petitioner did not set forth such a claim, we do not believe a remand is necessary. Like the appellate court below, we believe petitioner's request for leave to file a successive petition based on actual innocence can be resolved as a matter of law and that further proceedings are unnecessary.

¶ 32    The elements of a claim of actual innocence are that the evidence in support of the claim must be "newly discovered"; material and not merely cumulative; and of such conclusive character that it would probably change the result on retrial. *Ortiz*, 235 Ill. 2d at 333; *People v. Morgan*, 212 Ill. 2d 148, 154 (2004); *People v. Washington*, 171 Ill. 2d 475, 489 (1996). We deem it appropriate to note here that the United States Supreme Court has emphasized that such claims must be supported "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court added: "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id*.

¶ 33    As stated earlier, a petitioner's request for leave of court and his supporting documentation must set forth a colorable claim of actual innocence, *i.e.*, they must raise the probability that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.

¶ 34    As the appellate court below concluded, the alibi affidavits of Dominique and Kathleen Coleman do not qualify as newly discovered evidence. Citing *People v. Harris*, 206 Ill. 2d 293, 301 (2002), which defined newly discovered evidence as "evidence that was unavailable at trial and could not have been discovered sooner through due diligence," the appellate court asserted that Dominique's and Kathleen's testimony could have been discovered sooner through the exercise of due diligence. The court reasoned: "It is illogical for defendant to claim that this evidence of his alibi is new, where he obviously knew of his alibi at the time of trial, on appeal and during initial postconviction proceedings." Nos. 1-07-0714, 1-08-1089 cons. (unpublished order under Supreme Court Rule 23). The court continued: "The fact that defendant was allegedly with the Coleman family in their house on the night of the offense

-8-

could have been discovered sooner with the exercise of due diligence where defendant was the source of this information and was armed with this knowledge at the time of trial." *Id*.

¶ 35 Petitioner does not dispute that he knew of the alibi at the time of trial. Petitioner's argument is that this evidence was unavailable to him. In support, he points to Kathleen's and Dominique's assertions in their affidavits that attempts by petitioner's attorney to persuade them to testify were rejected.

¶ 36 After carefully reviewing the record, we find no indication that petitioner's attorney attempted to subpoena these witnesses to testify. Nor do we find any explanation as to why subpoenas were not issued. The logical assumption is that the witnesses' testimony would not have been helpful.

¶ 37 We do not conclude that such evidence could never be considered unavailable where, as here, the witnesses rejected the petitioner's attempts to persuade them to testify. In this instance, however, where there was no attempt to subpoena Dominique and Kathleen, and no explanation as to why subpoenas were not issued, the efforts expended were insufficient to satisfy the due diligence requirement. The alibi evidence could have been discovered sooner through the exercise of due diligence, and the evidence therefore was not newly discovered. See *Bentley v. United States*, 701 F.2d 897, 899 (11th Cir. 1983) (per curiam) (rejecting argument that alibi evidence could not have been produced at trial, even with due diligence; "[t]he facts concerning an alibi are peculiarly within the knowledge of a defendant himself").

¶ 38 This leaves only the affidavit of Eddie Coleman to support petitioner's claim. While petitioner obviously knew of Eddie at the time of trial, the evidence in Eddie's affidavit apparently was nevertheless "unavailable at trial" (*Harris*, 206 Ill. 2d at 301), and the evidence thus qualified as newly discovered. Eddie was a codefendant, with a fifth amendment right to avoid self-incrimination. No amount of diligence could have forced him to violate that right if he did not choose to do so. See *People v. Molstad*, 101 Ill. 2d 128, 135 (1984).

¶ 39 However, even though Eddie's affidavit contains newly discovered evidence, the result is the same. In the affidavit's specific references to petitioner, Eddie averred petitioner "had nothing to do with this shooting," he (Eddie) "never saw or spoke with [petitioner] after the funeral," petitioner was neither "a part [of nor] took part in this crime," and he (Eddie) did not "share this information [about the shooting] with [petitioner] after the crime." Though Eddie averred petitioner "had nothing to do with this shooting" and was neither "a part [of nor] took part in this crime," Eddie critically does not assert that petitioner was not *present* when the shooting took place. As the appellate court correctly noted, Eddie's averment in his affidavit that he was the principal offender "does little to exonerate defendant who *** was convicted of the murder under the theory of accountability."

¶ 40 Thus, even though Eddie Coleman's affidavit could be considered new evidence, it does not raise the probability that, in the light of the new evidence, it is more likely than not that no reasonable juror would have convicted petitioner. This evidence is not "of such conclusive character that it would probably change the result on retrial" (*Morgan*, 212 Ill. 2d at 154). See *Washington*, 171 Ill. 2d at 489 (describing "conclusive character" requirement

as the "most important[ ]" element of an actual-innocence claim). See also *Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010) (*habeas* petitioner asserting innocence as gateway to defaulted claim must show that, in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt); *Morales v. Johnson*, 659 F.3d 588, 605 (7th Cir. 2011) (noting that this "no reasonable juror" standard "requires a stronger showing than that required to establish *Strickland* prejudice").

¶ 41    The appellate court below held that further postconviction proceedings were unnecessary because petitioner failed to assert a colorable claim of actual innocence as a matter of law. We agree. Petitioner failed, as a matter of law, to raise the probability that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The appellate court correctly affirmed the circuit court's denial of leave to file petitioner's third and fourth successive petitions.

¶ 42                                III. CONCLUSION

¶ 43    For the reasons set forth above, we affirm the judgment of the appellate court, which affirmed the orders of the circuit court denying petitioner leave to file his third and fourth successive postconviction petitions.

¶ 44    Affirmed.