2021 IL App (1st) 171998-U

No. 1-17-1998

March 10, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLNOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 17607 |
| | ) | |
| ANDRE WILLIAMS, | ) | Honorable |
| | ) | Erica L. Reddick, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1  *Held*:  The denial of leave to file a successive postconviction petition is reversed when defendant raised a colorable claim of actual innocence.

¶ 2  Defendant Andre Williams appeals from the circuit court's order denying him leave to file a successive *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, defendant contends that the petition set forth a colorable

claim of actual innocence based upon a newly discovered exculpatory affidavit from an eyewitness. We reverse.

¶ 3    Following a jury trial at which he represented himself, defendant was found guilty of the armed robbery of Bruce Lee (720 ILCS 5/18-2(a)(2) (West 2010)) and possession of a controlled substance (720 ILCS 570/402(c) (West 2010)). Due to his criminal background, he was sentenced to life imprisonment for armed robbery under the Habitual Criminal Act (730 ILCS 5/5-4.5-95(a) (West 2010)). He was also sentenced to a concurrent extended-term sentence of six years for possession of a controlled substance.

¶ 4    The facts of this case were detailed in our prior orders. Accordingly, in this order, we set forth only the facts relevant for understanding the issue on appeal.

¶ 5    Prior to trial, the State filed a motion *in limine* noting that defendant tendered to the State a "sworn affidavit" from Steven Willis, a witness for the State, that was obtained on May 12, 2011, when Willis and defendant were both in jail. The document stated that Willis saw the man who robbed Lee walking on California Avenue and that defendant was not the offender. The motion acknowledged that it was generally improper to comment on a defendant's custody status, but nonetheless sought leave to inquire about the circumstances surrounding the document should defendant cross-examine Willis about it.

¶ 6    At the hearing on the State's motion, defendant agreed to "withdraw" the document that had been obtained from Willis on May 12, 2011, because Willis subsequently gave a virtually identical statement to defendant's investigator. The trial court ruled that the State could use either document while questioning Willis, but could not raise defendant's custody status on direct examination. However, depending upon how Willis testified regarding the voluntariness of the

statement and defendant's cross-examination of Willis, the State might be able to raise defendant's custody status on redirect.

¶ 7     The matter proceeded to a jury trial. Lee, who had several convictions for possession of a controlled substance and was in jail at the time of trial, testified that shortly after 7 p.m. on September 13, 2010, he was selling CDs and DVDs on the corner of California and Arthington Street in Chicago. Willis was also present. An African-American man approached and asked for "sex movies," so Lee looked at his inventory. When he looked up, there was a firearm in his face and the man demanded money. Lee gave the man several hundred dollars and the man ran away. When police arrived, Lee pointed them in the direction the offender went. After being told that police caught the man, Lee and Willis walked to Polk Street. There, Lee saw a person in the back of vehicle, but no one asked him to identify this person. He did not identify anyone at trial.

¶ 8     During cross-examination, Lee admitted telling defendant's former attorney David Peilet that defendant did not look like the offender and signing a paper stating that he could not positively say that defendant robbed him. On July 17, 2011, Lee signed a statement for defendant's investigator Robert O'Neill.

¶ 9     Willis, who had five prior narcotics convictions, testified that a man exited a brown vehicle, walked past him to Lee, talked about the DVDs, and then said, "stick up." Willis identified defendant in court as this man. Wills saw a firearm in defendant's hand. Lee gave defendant money and defendant ran away. Seconds later, Lee flagged down police officers and pointed them in the direction that defendant ran. Willis and Lee then walked to where officers had taken defendant into custody and Lee identified defendant as the person who robbed him.

¶ 10    During cross-examination, Willis acknowledged that he did not identify defendant on the night of the robbery. However, he later told an officer that defendant was the offender. On June 2, 2011, Willis wrote and signed an affidavit for O'Neill stating that he saw the person who robbed Lee and it was not defendant. Willis was in jail at that time.

¶ 11    During redirect examination, Willis testified that on May 12, 2011, he was in jail and saw defendant in a holding facility while waiting to go to court. Defendant "rushed" him and said they needed to speak. Defendant gave Willis paper and a pen and told him what to write. Although the resulting document stated that defendant was not the person who robbed Lee, Willis testified that this was not true. Willis explained that he wrote the affidavit because defendant told him to, and he was afraid and knew he would encounter defendant again in jail. Willis testified that the affidavit that he signed for defendant's investigator was also false.

¶ 12    During recross-examination, Willis testified that defendant told him he had "better" write and sign the affidavit but did not touch him. Willis did not tell corrections officers that he was threatened and did not see defendant on the day he signed the affidavit for defendant's investigator.

¶ 13    Chicago police officer Michael Suing testified that on September 13, 2010, he and his partner Officer John O'Keefe were flagged down by Lee, who stated that he had just been robbed and pointed to the offender. Suing identified defendant in court as the person Lee pointed to. Suing exited his vehicle, pursued defendant, and caught him. Currency was recovered from defendant's hand and pocket. No firearm was recovered from defendant. Suing was present when another officer recovered narcotics from defendant's pants.

¶ 14    O'Keefe testified that Lee flagged down the officers, stated he had been robbed, and pointed to defendant. O'Keefe identified defendant in court. Once defendant was taken into

custody and Lee arrived, O'Keefe and other officers performed a show-up. Lee yelled, pointed, and said " 'That's the guy that robbed me.' "

¶ 15    Additional evidence established that six Ziploc bags containing suspect heroin were recovered during a custodial search of defendant. The contents of the bags had a total weight of 0.6 grams, and tests upon 0.1 grams were positive for the presence of heroin.

¶ 16    The defense presented O'Neill, who testified that he spoke with Willis on June 2, 2011, and memorialized Willis's statement. Willis told him to write that the statement was made with "free will" and "no threats." During cross-examination, O'Neill testified that the Cook County Sheriff asked him to take the statement and that Willis was in jail at the time. O'Neill asked Willis whether any threats had been made and Willis said no, so O'Neill wrote that down.

¶ 17    The jury found defendant guilty of armed robbery and possession of a controlled substance. Defendant requested counsel and a public defender was appointed. Counsel filed a motion for a new trial, which was denied. Following a sentencing hearing, the trial court sentenced defendant to life in prison for armed robbery pursuant to the Habitual Criminal Act. The court also sentenced defendant to a concurrent extended-term six-year sentence for possession of a controlled substance. On direct appeal, we affirmed and corrected the mittimus. *People v. Williams*, 2013 IL App (1st) 120518-U.

¶ 18    On March 12, 2015, defendant filed a *pro se* petition for postconviction relief alleging that he was actually innocent when Willis and Lee failed to properly identify him as the offender and Willis "seemed to change his position" on the offender's identity "several times." The petition also alleged that the State and trial court violated their obligations concerning discovery requests defendant made regarding his own medical records. Defendant filed a memorandum in support, as

well as Willis's affidavit that was presented at trial, Lee's July 2011 statement, and a report by O'Neill. In his statement, Lee stated that he did not know defendant as "the person who robbed me," that he did not view a police line-up or pictures, and that he went to the police station and signed a complaint because he thought that he would get his money back.

¶ 19    On June 10, 2015, the circuit court summarily dismissed the petition as frivolous and patently without merit in a written order. We affirmed on appeal. See *People v. Williams*, 2018 IL App (1st) 152064-U.

¶ 20    On January 10, 2017, defendant filed a *pro se* motion for leave to file a successive postconviction petition raising a claim of actual innocence based upon the fact that Lee spoke to the actual offender on the street in 2014. Attached to the petition were Lee's August 29, 2016 notarized affidavit and a DVD recording of the interview with licensed private investigator Richard Hogan which was the basis for Lee's affidavit.[1]

¶ 21    In his affidavit, Lee averred that he did not know defendant and that he did not identify the person who robbed him in a line-up or photo array. Lee further averred that he thought that if he signed a complaint, he would get his money back. Lee finally averred that, in 2014, around California and Polk, he saw and spoke with the man who robbed him. The man admitted that he robbed Lee and he needed money for drugs. Lee had not seen the man again.

¶ 22    The circuit court denied defendant leave to file the successive petition on June 23, 2017. The court found that although the information from Lee could be considered newly discovered and

---

[1] In their briefs in appeal, the parties refer to this document as an "affidavit" although it is actually titled a "statement." In this order, we adopt the parties' usage. We also note that the DVD recording upon which the statement is based is included in the record on appeal and was reviewed during the preparation of this order.

noncumulative, it would not likely change the result on retrial because Lee did not identify defendant as the offender at trial.

¶ 23    On appeal, defendant contends that the circuit court erred when it denied him leave to file the successive *pro se* postconviction petition because it set forth a colorable claim of actual innocence based upon newly discovered evidence. Specifically, defendant contends that Lee's newly discovered exculpatory affidavit raised the probability that no rational trier of fact would have found him guilty if Lee testified that someone other than defendant robbed him.

¶ 24    The Post-Conviction Hearing Act provides a statutory remedy to criminal defendants who allege substantial violations of their constitutional rights at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Post-Conviction Hearing Act is not a substitute for an appeal but rather a mechanism for a defendant to assert a collateral attack on a final judgment. *Id*. The Post-Conviction Hearing Act contemplates only one postconviction proceeding; however, this bar will be relaxed when a defendant can establish either cause and prejudice for failing to raise a claim in an earlier proceeding, or actual innocence. *Id.* ¶¶ 22-23. A defendant must therefore obtain leave of court to file a successive postconviction petition. *Id*. ¶ 24

¶ 25    A request to file a successive petition based on actual innocence is reviewed under a higher standard than the frivolous or patently without merit standard applied to an initial petition. *Id*. ¶¶ 25-29. The circuit court should deny leave to file a successive petition when it is clear from a review of the petition and supporting documentation that, as a matter of law, the petition cannot set forth a colorable claim of actual innocence. *People v. Sanders*, 2016 IL 118123, ¶ 24. Accordingly, leave of court should be granted where the petition and supporting documentation

raises the probability that it is more likely than not that no reasonable juror would have convicted the defendant in light of the new evidence. *Id*.

¶ 26    At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true. *People v. Robinson*, 2020 IL 123849, ¶ 45. When determining the legal sufficiency of a postconviction petition, a court is precluded from making factual and credibility determinations. *Id.* We review the denial of leave to file a successive postconviction petition alleging actual innocence *de novo*. *Id.* ¶ 40.

¶ 27    In order to establish a claim of actual innocence, a petition's supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *Id*. ¶ 47. Evidence is newly discovered if it was discovered after trial and a defendant could not have discovered it earlier through the exercise of due diligence. *Id*. Evidence is material when it is relevant and probative of a defendant's innocence, and noncumulative if it adds to the information that the fact finder heard at trial. *Id*. Conclusive evidence is evidence that, when considered with the evidence presented at trial, would probably lead to a different result at retrial. *Id*. "The conclusive character of the new evidence is the most important element of an actual innocence claim." *Id.*; see also *People v. Coleman*, 2013 IL 113307, ¶ 97 (asking whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines confidence in the judgment). Our supreme court has determined that the new evidence need not be entirely dispositive to be likely to alter the result on retrial and that probability is the key to considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence. *Robinson*, 2020 IL 123849, ¶ 48.

¶ 28    Here, in order to determine whether defendant has set forth a colorable claim of actual innocence, we consider whether the successive petition, along with the supporting documents, raised the probability that it is more likely than not that no reasonable trier of fact would find him guilty of armed robbery in light of the new evidence.

¶ 29    The State concedes, and we agree, that the contents of Lee's affidavit, namely, that in 2014 he encountered the person who robbed him on the street and this person admitted to the crime, is newly-discovered, material, and noncumulative. Although Lee did not identify defendant at trial, he did not testify that the offense was committed by someone other than defendant. The fact that Lee saw the actual offender four years after the offense and that this person admitted to the crime is material to the issue of defendant's guilt and not cumulative of the evidence at trial.

¶ 30    The State argues, however, that the facts contained in Lee's affidavit are not so conclusive that it is more likely than not no reasonable juror would find him guilty beyond a reasonable doubt because Lee's affidavit consists of inadmissible hearsay and the unidentified person's statement is unreliable, uncorroborated, and vague. The State further argues that other evidence at trial established that defendant was the offender, as Willis identified defendant as the person who robbed Lee, Officers Suing and O'Keefe testified that Lee pointed at defendant when he said he had just been robbed, and O'Keefe testified that Lee identified defendant at a show-up. The State concludes that defendant was properly denied leave to file the successive *pro se* petition because the facts contained in Lee's affidavit are neither exonerating nor conclusive.

¶ 31    However, as our supreme explained in *Robinson*, although the conclusive character of new evidence is the most important element of an actual innocence claim, ultimately,

"the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. [Citation.] The new evidence need not be entirely dispositive to be likely to alter the result on retrial. [Citation.] Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence. [Citation.]" *Id.* ¶¶ 47-48.

¶ 32    Thus, the question before this court when assessing whether a defendant has met "the low threshold applicable to a colorable claim of actual innocence" is "whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal on retrial." *Id.* ¶ 60.

¶ 33    Initially, we note that the State argues that Lee's proposed testimony that the actual offender admitted his guilt would be inadmissible hearsay at a new trial. However, Illinois Rule of Evidence 1101(b)(3) (eff. Sept. 17, 2019) specifically provides that the rules of evidence do not apply to postconviction hearings. Moreover, to the extent the State relies on *Chambers v. Mississippi*, 410 U.S. 284, 300-01, (1973), wherein the United States Supreme Court articulated factors that are relevant in determining whether there are sufficient indicia of trustworthiness to admit an extrajudicial confession, to argue that the confession contained in Lee's affidavit is unreliable, our supreme court rejected a similar argument in *Robinson*. There, the court found arguments regarding admissibility and reliability were "premature" at the motion for leave to file stage of a successive postconviction proceeding. See *Robinson*, 2020 IL 123849. ¶ 81.

¶ 34    Ultimately, taking Lee's factual averments that someone else committed the offense as true, defendant has presented evidence that could place the trial evidence in a different light and undermines confidence in the guilty finding. See *id.* ¶ 76 (finding that an affidavit providing

evidence that a different person is guilty was "of such a conclusive character as to lead to a different result on retrial"). At trial, Officers Suing and O'Keefe testified that Lee pointed to defendant as the person who robbed him and Willis identified defendant as the offender at trial, although he also provided statements to defendant and a defense investigator that defendant was not the offender. Lee, however, did not identify defendant at trial, and although Officer O'Keefe testified that Lee identified defendant in a show-up, Lee denied doing so. Thus, the evidence at trial connecting defendant to the offense was Willis's identification, as well the police officers' testimony that Lee pointed to defendant and identified him in a show-up. This identification testimony is directly contradicted by the assertion contained in Lee's affidavit that someone else committed the offense. Here, as in *Robinson*, we are unable to assess the reliability or veracity of Lee's affidavit without engaging in a credibility determination.  See *id.*  ¶ 83.

¶ 35    Taking as true the allegations in Lee's affidavit, as we must at this stage of the proceedings under the Post-Conviction Hearing Act, we conclude that a factfinder could determine that this new evidence exculpates defendant in the armed robbery and refutes the State's evidence at trial. *Id.* Therefore, because Lee's affidavit "contain[s] evidence of such a conclusive character that, when considered along with the trial evidence, would probably lead to a different result," the circuit court erred in denying him leave to file his successive *pro se* postconviction petition. *Id.*

¶ 36    Accordingly, because defendant has satisfied the pleading requirements for obtaining leave to file a successive postconviction petition, his claim of actual innocence must be advanced to second stage proceedings under the Post-Conviction Hearing Act. See *id.* ¶ 85 (*"*the only issue presented in this case is whether [the defendant] may file his successive postconviction petition that alleges he is actually innocent of the crimes for which he has been convicted and sentenced").

Accordingly, we reverse the judgment of the circuit court and remand the cause for further proceedings under the Post-Conviction Hearing Act.

¶ 37    Reversed and remanded.