**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200515-U

Order filed November 15, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal Nos. 3-20-0515 and 3-20-0529 Circuit No. 89-CF-739 |
| BERNON L. HOWERY, | ) ) ) | Honorable Michael C. Sabol, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Holdridge and McDade concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The court did not err by denying defendant's motion for leave to file a successive postconviction petition.

¶ 2     Defendant, Bernon L. Howery, appeals the Kankakee County circuit court's denial of his motion for leave to file a successive postconviction petition. Defendant argues that he stated a colorable claim of actual innocence based upon new developments relating to the scientific investigation of fires. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with four counts of first degree murder (Ill. Rev. Stat. 1989, ch. 38, ¶ 9-1(a)(2)), four counts of felony murder (*id.* ¶ 9-1(a)(3)), and one count of aggravated arson (*id.* ¶ 20-1.1). The charges stemmed from a fire that occurred at Linda Walls's home in the early morning hours of December 9, 1989, which killed her four children. Evidence at the bench trial established that defendant had been in a relationship with Walls that ended in the fall of 1989, and he was the father of three of her children. Defendant had been at Walls's house late on December 8 and into the early morning hours of December 9. The fire was discovered at approximately 1 a.m. on December 9. Defendant asked for and was given a lighter before other adults that had been present at Walls's home left. In one of his statements, defendant admitted he had a lighter that night but stated one of the children gave it to him. Additionally, defendant had stated that he warned Walls not to leave clothing on the floor of the basement or underneath the stairs. When asked how he knew the fire originated in clothing, defendant had no explanation.

¶ 5        Investigators agreed that there were two separate fires in the house with different points of origin. The more destructive fire began in a storage area underneath the stairs that led from the first to second floor. A basket with fabric was located in the doorway that led underneath those stairs. An unrelated fire started in a pile of clothing near the dryer in the basement. Two witnesses agreed that the pile of clothing in the basement had a peculiar smell. Investigators agreed that none of the appliances malfunctioned and there were no indications of electrical problems.

¶ 6        Expert witness John DeHaan conducted an investigation as to the cause and origin of the fire. He investigated the scene of the fire and reviewed photographs. He concluded there were two separate fires that occurred in the house. As to the fire in the basement, he noted that it was

confined to an area around the dryer including a burnt pile of clothing. He stated there was no direct fire damage to the basement ceiling which indicated there was no fire extension from the fire on the first floor. DeHaan conducted an extensive investigation and ruled out accidental causes. The lack of accidental causes and the existence of two separate and unrelated fires led DeHaan to believe the fires were deliberately started. He opined the fires were started by a direct flame such as a lighter or match. DeHaan noted it was possible the fire could ignite with a lit cigarette but it would take half an hour to two hours to occur, which was unlikely due to the timeline of when the adults left the home and when the fire occurred. DeHaan did not have positive visual evidence that an accelerant was used and could not conclusively determine if one was used.

¶ 7        A chemist testified there was a microliter of kerosene and an unidentified amount of heavy petroleum distillate on defendant's shoes. Another chemist testified heavy petroleum distillate was detected on defendant's pants and aluminum cans and plastic drinking cups obtained from the scene. There was testimony that while defendant was at Walls's home prior to the fire starting he consumed alcoholic beverages.

¶ 8        Defendant was found guilty on all counts and ultimately sentenced to life in prison. His convictions were affirmed on appeal. *People v. Howery*, 178 Ill. 2d 1 (1997). Additionally, defendant filed various unsuccessful collateral proceedings. See *People v. Howery*, No. 3-05-0674 (2007) (unpublished order under Illinois Supreme Court Rule 23); *People v. Howery*, 2011 IL App (3d) 090650-U; *People v. Howery*, 2019 IL App (3d) 160603.

¶ 9        In March 2020, defendant filed a motion for leave to file a successive postconviction petition alleging actual innocence, which is the subject of the instant appeal. As relevant here, defendant argued that developments in the scientific investigation of fires constitutes new

3

evidence of actual innocence. Defendant argued that the new developments indicate that his conviction was based on evidence that was repudiated and that the expert testimony used to convict him was unreliable. Specifically, he argued that the National Fire Protection Association (NFPA), in its NFPA 921 Guide for Fire and Explosion Investigations—the relevant portion of which was attached to the motion—repudiated the negative corpus methodology whereby it is determined that a fire was deliberately set based upon the elimination of accidental causes. He further argued that since DeHaan based his opinion that the fire was deliberate on the fact that he ruled out accidental causes, his opinion was not reliable and may not even be admissible today. Defendant noted

> "that the use of logic and deductive reasoning as an analytical method is still endorsed by the NFPA in limited circumstances where, for example, the source of the ignition cannot be identified but can logically be inferred, where alternative ignition sequences have been considered and eliminated, and where it is consistent with all the known facts. *** One of the limited circumstances that lends itself to use of this method is when there are multiple fires."

Defendant's motion then acknowledged that DeHaan's opinion may remain admissible today because DeHaan opined there were two separate fires but still asserted that because of the repudiation of the negative corpus methodology the evidence in his case should be reexamined.

¶ 10       In response to the motion, the court advised that it did not have jurisdiction due to a pending appeal and directed defendant to refile the motion when the appeal was concluded. In May 2020, defendant filed a supplement to the March 2020 motion for leave to file a successive petition, which largely contained the same allegations as the March filing. After review of both

the March and May filings, the court denied leave. Defendant filed a motion to reconsider, which the court denied. Defendant appeals.

¶ 11                                                        II. ANALYSIS

¶ 12        Defendant argues that the court erred by denying him leave to file a successive postconviction petition because his motion stated a colorable claim of actual innocence based upon the repudiation of the negative corpus methodology which DeHaan based his opinion on.

¶ 13        "[A] defendant must obtain leave of the trial court before he may obtain review of a second or subsequent postconviction petition on its merits." *People v. Bland*, 2020 IL App (3d) 170705, ¶ 9. When a defendant seeks leave to file a successive postconviction petition on the basis of actual innocence, "leave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence." *People v. Edwards*, 2012 IL 111711, ¶ 24. "Stated differently, leave of court should be granted when the petitioner's supporting documentation raises the probability that 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' " *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298 327 (1995)).

¶ 14        Although DeHaan utilized the negative corpus methodology, his opinion that the fires at issue in this matter were deliberately set appears to still be valid and admissible under the newer NFPA standards. This is because those standards, as defendant admits, still allow for the use of deductive reasoning to determine a fire was deliberately set under limited circumstances, such as those present here where alternative ignition sequences have been eliminated, it is consistent with the known facts, and there were multiple fires. In addition, defendant gave a statement which indicated he had knowledge that the fires were started in clothing for which he had no

5

explanation and chemists found kerosene and a heavy petroleum distillate on articles of defendant's clothing. Considering all the information together, we conclude that the repudiation of the negative corpus methodology does not raise the probability that it is more likely than not that no reasonable juror would have convicted defendant. Therefore, the court did not err in denying defendant's motion for leave to file a successive postconviction petition.

¶ 15                                III. CONCLUSION

¶ 16        The judgment of the circuit court of Kankakee County is affirmed.

¶ 17        Affirmed.