NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230610-U

NO. 4-23-0610

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Logan County |
| EDWARD C. LASCOLA, | ) | No. 01CF106 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted the Office of the State Appellate Defender's motion to withdraw as appellate counsel and affirmed the circuit court's judgment, concluding no issue of arguable merit could be raised on appeal.

¶ 2    Defendant, Edward C. Lascola, appeals from the circuit court's judgment denying him leave to file a successive postconviction petition. On appeal, defendant's appointed counsel, the Office of the State Appellate Defender (OSAD), moves to withdraw on the ground no issue of arguable merit can be raised. For the reasons that follow, we grant OSAD's motion and affirm the court's judgment.

¶ 3                                      I. BACKGROUND

¶ 4        On May 27, 2001, 11-month-old Daneysia Williams was pronounced dead upon arriving at a hospital's emergency room. Her cause of death was a laceration to the liver. Defendant was later arrested and charged with the first degree murder of Daneysia.

¶ 5        At defendant's trial, the evidence showed defendant dated Kimberly Williams, Daneysia's mother, prior to Daneysia's death. The three of them had lived together since January 2001.

¶ 6        The State presented testimony from several witnesses who were at the house shared by defendant, Williams, and Daneysia on May 27, 2001. According to the State's witnesses, that morning, defendant, at William's request, took a crying and cranky Daneysia to a bedroom. After defendant closed the door to the bedroom, a loud thud and more crying from Daneysia were heard. Williams opened the bedroom door, and defendant was heard telling Williams not to touch Daneysia because she was " 'straight' " or all right. Defendant later left the house, and Williams returned to the bedroom several times. That afternoon, Williams discovered Daneysia was not breathing and took her to the emergency room, where she was pronounced dead.

¶ 7        An inmate with whom defendant was housed after his arrest testified defendant stated he meant to hit Daneysia on the leg and missed, hitting her in the midsection. The inmate also testified defendant demonstrated how he hit Daneysia—a slap with the front side of his hand.

¶ 8        A pathologist who performed an autopsy on Daneysia opined the laceration to her liver was caused by broad-surface blunt trauma of the lower chest and upper abdominal region, a non-accidental trauma. The pathologist stated the minimum time of death prior to arrival at the hospital was 1.5 to 2.5 hours and the maximum time could have been as much as 11 hours, although the minimum range was far more likely. The pathologist discovered Daneysia had a rib fracture which was 8 to 10 weeks old, as well as a collar bone fracture which was a "couple of months"

older than the fatal liver wound. The pathologist opined the rib fracture was caused by hands crushing or grasping Daneysia's chest.

¶ 9        Many of defendant's friends and family testified to prior incidents where defendant abused Daneysia. There was also testimony Williams may have engaged in some abuse of Daneysia herself.

¶ 10        The defense called several witnesses, including Fred Pratt and Tyanna Barnes, both of whom were at the house on May 27, 2001. Pratt testified he was in the bedroom with defendant and a crying Daneysia. Pratt asserted defendant did not strike Daneysia. Pratt further asserted he and defendant left the house when Daneysia was no longer crying and appeared to be "[p]erfectly fine." Barnes testified she did not hear any kind of noise when defendant and Daneysia were in the bedroom and later saw Kimberly incorrectly give Daneysia CPR by striking her chest and back.

¶ 11        No witness from the State or the defense identified Katrina Jarrett as being present at the house on May 27, 2001.

¶ 12        After its deliberations, the jury found defendant guilty of first degree murder. He was later sentenced to 40 years in prison. Defendant appealed, and this court affirmed defendant's conviction. *People v. Lascola*, 4-02-1037 (July 28, 2004) (unpublished order under Supreme Court Rule 23). Defendant's conviction also survived a collateral attack by way of a postconviction petition. *People v. Lascola*, 2012 IL App (4th) 110234-U.

¶ 13        In 2015, defendant filed a *pro se* motion for leave to file a successive postconviction petition, which he supplemented many years later with the assistance of retained counsel. In his motion, defendant asserted a claim of actual innocence based upon newly discovered evidence. Defendant relied upon an account of a witness, Katrina Jarrett, who was allegedly at the house on May 27, 2001, but did not testify at trial. According to Jarrett's affidavits, that morning, defendant

and Williams took Daneysia into a bedroom together. Jarrett, who could not see into the bedroom, then heard a noise, followed by Daneysia crying. Williams eventually left the bedroom and said Daneysia was "alright." "A little while later," Fred Pratt arrived and went into the bedroom with defendant. Pratt and defendant then left the house. About an hour later, Williams returned to the bedroom and then took a crying Daneysia to the kitchen to make her a bottle of milk. Jarret described Daniesha as "look[ing] like she just woke up." Williams took Daniesha back to the bedroom after she made the bottle, where Williams remained for about 10 minutes. Jarrett asserted defendant's siblings tried to get her to speak to defendant's trial counsel, which she refused to do because she did not want to get "involved." Defendant alleged he told his trial counsel about Jarrett but his counsel never contacted her. Defendant submitted his own affidavit, as well as affidavits from two of his siblings and Pratt. Defendant's siblings described their prior attempts to get Jarrett to convey her account of May 27, 2001. Defendant, his siblings, and Pratt also provided their respective accounts of May 27, 2001.

¶ 14        In 2023, the circuit court denied defendant leave to file a successive postconviction petition, finding he did not set forth a colorable claim of actual innocence based upon newly discovered evidence. Defendant filed a timely notice of appeal from the court's judgment, and OSAD was appointed to represent defendant on appeal.

¶ 15        OSAD filed a motion to withdraw as appellate counsel on the ground no issue of arguable merit could be raised. This court denied OSAD's motion without prejudice, finding the brief which accompanied the motion was insufficient. *People v. Lascola*, No. 4-23-0610 (2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)(2)). OSAD has now submitted another motion to withdraw as appellate counsel on the ground no issue of arguable merit can be raised. Its accompanying brief addresses the concerns raised in our prior order.

¶ 16                                    II. ANALYSIS

¶ 17        OSAD indicates it considered contesting the circuit court's finding that defendant did not set forth a colorable claim of actual innocence based upon newly discovered evidence but concluded any argument in support thereof would be frivolous. Defendant, by way of a written response, disagrees with OSAD's assessment.

¶ 18        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a "statutory procedure by which a defendant can pursue a claim that his conviction or sentence was based on a substantial denial of his constitutional rights." *People v. Clark*, 2023 IL 127273, ¶ 38, 216 N.E.3d 855. The Act contemplates the filing of only one postconviction petition. *Id.* ¶ 39. There are, however, circumstances where a successive postconviction petition may be filed. *People v. Taliani*, 2021 IL 125891, ¶ 55, 174 N.E.3d 503. One such circumstance is where a defendant asserts a claim of actual innocence based upon newly discovered evidence. *People v. Edwards*, 2012 IL 111711, ¶ 23, 969 N.E.2d 829.

¶ 19        A claim of actual innocence based upon newly discovered evidence requires evidence that is "(1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47, 181 N.E.3d 37. Newly discovered evidence, as it has been defined by our supreme court, "is evidence that was discovered after trial and that the [defendant] could not have discovered earlier through the exercise of due diligence." *Id.* Evidence is material and not cumulative where it is relevant and probative of the defendant's innocence and adds to the information presented at trial. *Id.* Finally, the conclusive character of the new evidence, the most important element of a claim of actual innocence, "refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id.*

¶ 20　　　　　Where a defendant seeks to file a successive postconviction petition asserting a claim of actual innocence based upon newly discovered evidence, that defendant must first obtain leave of court. *Edwards*, 2012 IL 111711, ¶ 24. The pertinent question when reviewing a request for leave to file such a petition is whether the materials submitted by the defendant "set forth a colorable claim of actual innocence." *Robinson*, 2020 IL 123849, ¶ 50. In considering this question, all well-pleaded allegations not positively rebutted by the record are to be taken as true. *Id.* ¶ 45. As our supreme court has explained, "the standard for alleging a colorable claim of actual innocence falls between the first-stage pleading requirement for an initial petition and the second-stage requirement of a substantial showing." *Id.* ¶ 58.

¶ 21　　　　　The denial of leave to file a successive postconviction petition alleging actual innocence based upon newly discovered evidence is reviewed *de novo*. *Id.* ¶ 40.

¶ 22　　　　　After reviewing OSAD's motion and accompanying brief, defendant's response to OSAD's motion, and the record, including defendant's motion for leave to file a successive postconviction petition, the affidavits attached to it, and the trial evidence, we agree with OSAD's assessment—any argument contesting the circuit court's finding that defendant did not set forth a colorable claim of actual innocence based upon newly discovered evidence would be frivolous.

¶ 23　　　　　The record shows defendant did not submit any evidence discovered after trial that he could not have discovered earlier through the exercise of due diligence. The affidavits submitted by defendant set forth accounts which were either known to him before trial or could have been discovered earlier by him through the exercise of due diligence. As for the account from Jarrett, defendant acknowledges both he and his trial counsel were aware of Jarrett prior to trial. In fact, defendant avers he was aware of Jarrett's presence at the house on May 27, 2001. Despite this knowledge, defendant did not pursue Jarrett's account prior to trial. To be sure, Jarrett did express

to defendant's family an unwillingness to get involved with defendant's case; however, there is nothing to indicate—contrary to defendant's assertion in his response to OSAD's motion—she would not have testified if subpoenaed. Jarrett's account, therefore, could have been discovered earlier through the exercise of due diligence.

¶ 24 Moreover, even if Jarrett's account could be deemed newly discovered, it is not of such a conclusive character that it would probably lead to a different result. First, no witness who testified at trial identified Jarrett as being present at the house on May 27, 2001. Thus, for a jury to change the result at trial based on Jarrett's account, it would have to find witnesses for both the State and the defense failed to identify Jarrett's presence despite the fact those witnesses agreed on many of the details of May 27, 2001. Second, the defense presented testimony challenging whether defendant caused Daneysia's fatal injury and suggesting Williams might have been the perpetrator. Similar defense testimony, therefore, was presented, considered, and rejected. And third, the State presented evidence of defendant admitting to a fellow inmate that he struck Daneysia and evidence of defendant's prior abuse of Daneysia. This evidence is not impacted by Jarrett's account. Ultimately, Jarrett's account, when considered along with the trial evidence, does not raise a probability of a different result.

¶ 25 In sum, the record shows defendant did not set forth a colorable claim of actual innocence based upon newly discovered evidence.

¶ 26 III. CONCLUSION

¶ 27 Because the record reveals no issue of arguable merit can be raised on appeal, we grant OSAD's motion to withdraw and affirm the circuit court's judgment.

¶ 28 Affirmed.