**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200205-U

Order filed June 1, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0205 Circuit No. 13-CF-202 |
| HARLEY M. BRADY, | ) ) ) | Honorable Cynthia M. Raccuglia, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and Lytton concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   The circuit court properly dismissed defendant's postconviction petition.

¶ 2      Defendant, Harley M. Brady, appeals the La Salle County circuit court's dismissal of his first-stage postconviction petition. Defendant argues the court erred in dismissing his petition because he asserted an arguable claim of actual innocence. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    Defendant was charged with unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2012)) and armed robbery (*id.* § 18-2(a)(2)). Defendant represented himself at a jury trial.

¶ 5    At trial, Keith Manning testified that he, defendant, and Blair Lavoy robbed the Burger King because they needed money for drugs. They used a black air soft pistol, a .380 handgun, and a shotgun. Manning knew the closing procedures, and that the safe was always left open, the back door never shut properly, and only two people worked the closing shift because he had previously worked that shift. Allison Spaulding provided transportation to and from the Burger King. The robbery was Manning's idea, and he never discussed it with Erich Delk who he previously worked with at the Burger King.

¶ 6    Delk testified that he was working the closing shift with Jerica Milligan when the robbery occurred. The safe was open as part of the closing procedures, and the back door was open because it did not shut properly. The back door was used to take garbage out at night. Just after 11 p.m., Delk and Milligan returned from taking the garbage out and were in the kitchen when three men wearing face coverings walked through the back door. One man walked past Delk and went directly to the office where the safe was located. Delk thought one man was Manning based on his hairline and gait. After the robbers left, Delk called the police and informed them that he believed Manning was one of the robbers.

¶ 7    On cross-examination, Delk admitted that the back door and safe were not supposed to be open pursuant to company policy. Delk stated that the safe was left open because he was counting the money and needed access to petty cash. Manning was aware that Delk left the safe open during closing procedures.

¶ 8    Milligan also testified that pursuant to company policy the back door was not supposed to be used after dark, but the employees used it to take out garbage. Additionally, Milligan noticed one of the robbers carrying a black handgun and another hiding a shotgun in his pants.

¶ 9    Detective Randy Baxter testified on cross-examination that the armed robbery was unusual because normally the robber would display a firearm and ask for what they intended to steal, whereas in this case the robber did not point a weapon at the employees and walked past the employees without stating their purpose or asking for anything. Baxter elaborated that the robbers appeared to have knowledge of the innerworkings of the Burger King as they went directly to where the money was located.

¶ 10    Joshua Davis testified for the defense. Manning tried to recruit Davis to rob the Burger King. Manning told Davis that he knew the employees, that the back door was broken, and that the cameras did not work. Manning was confident he knew enough about the Burger King to execute the robbery without any problems.

¶ 11    Davis gave a written statement to defendant's mother, wherein he indicated that Delk was also involved with Manning in planning the robbery. Following that statement, he noted that he did not know whether Manning had previously talked about the robbery with any Burger King employees to set it up. Additionally, Davis stated that another Burger King employee was present when Manning planned the robbery.

¶ 12    On cross-examination, Davis admitted that the written statement he gave to defendant's mother did not indicate that anyone else was present when Manning planned the robbery. Davis told police that the robbery was an inside job and that an employee had a plan with Manning. Davis was previously convicted twice for retail theft and once for forgery.

¶ 13    Defendant took the stand in his own defense. On cross-examination and redirect, defendant admitted to robbing the Burger King with Manning and Lavoy. Also, defendant stated the robbery had been planned on two separate occasions, but Manning backed out both times. Prior to robbing the Burger King, Manning started to back out again because they did not have a ride. Defendant called Spaulding for a ride. Defendant denied that any guns were used during the robbery.

¶ 14    On rebuttal, the State called Baxter. Baxter testified that he discussed the robbery with Davis over the phone. Davis told Baxter that Manning tried to recruit him for the robbery. Only Manning and Davis were present during that conversation. Davis did not mention any Burger King employees being involved in the robbery.

¶ 15    In closing arguments, defendant argued the robbery was staged or an inside job.

¶ 16    The jury found defendant guilty of armed robbery and UPWF. On direct appeal, defendant argued his sentence was excessive and the court considered a factor inherent in the offense. We affirmed defendant's conviction and sentence. *People v. Brady*, 2017 IL App (3d) 150184-U.

¶ 17    Defendant filed a postconviction petition as a self-represented litigant. In his petition, he claimed actual innocence based on newly discovered evidence. Specifically, the affidavit of Sandra Higgins established that the robbery was an inside job. In the affidavit, Higgins stated that she was a shift supervisor and acting general manager at the Burger King. Further, she was familiar with the robbery. Higgins claimed that an investigator from Cave Enterprises, the corporate owner of the Burger King, determined that the robbery was an inside job. According to Higgins, Milligan admitted to leaving the door open, and Delk admitted to leaving the safe open and not properly setting the alarm. The investigator instructed management not to speak about any of his findings or they would be fired, and charges would be brought against them. The affidavit also contained claims attacking the character of both Delk, Milligan, and Manning.

4

¶ 18    The court summarily dismissed the petition at the first stage, finding it frivolous and patently without merit. Defendant appealed.

¶ 19                                    II. ANALYSIS

¶ 20    Defendant argues that the circuit court erred in summarily dismissing his postconviction petition because he made an arguable claim of actual innocence based on Higgins's affidavit indicating that the robbery was an inside job.

¶ 21    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) sets out a three-stage proceeding in which a criminal defendant may assert that his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the first stage, the court must accept as true and liberally construe all the allegations in the petition unless contradicted by the record. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A defendant need only allege sufficient facts to state the "gist" of a constitutional claim for his petition to be forwarded to the second stage. *Hodges*, 234 Ill. 2d at 9. The court may summarily dismiss a first-stage petition as frivolous or patently without merit where it has no arguable basis in law or fact. *Id.* at 16. The dismissal of a postconviction petition is reviewed *de novo*. *Id.* at 9.

¶ 22    "The elements of a claim of actual innocence are that the evidence in support of the claim must be 'newly discovered'; material and not merely cumulative; and of such conclusive character that it would probably change the result on retrial." *People v. Edwards*, 2012 IL 111711, ¶ 32. "[C]onclusive means the evidence, when considered along with the trial evidence, would probably lead to a different result." *People v. Coleman*, 2013 IL 113307, ¶ 96. "The conclusive character of the new evidence is the most important element of an actual innocence claim." *People v. Robinson*, 2020 IL 123849, ¶ 47.

5

¶ 23    "Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* ¶ 48. Probability, not certainty, is the key in determining whether the fact finder would reach a different result after considering the prior evidence along with the new evidence. *Coleman*, 2013 IL 113307, ¶ 97.

¶ 24    Here, assuming Higgins's affidavit is newly discovered, material, and not cumulative; the affidavit is not of such conclusive character that it would probably change the result on retrial. The new evidence presented in the affidavit is a statement by a corporate investigator that the robbery was an inside job, and evidence intended to undermine the credibility of Delk, Milligan, and Manning. The statement by the corporate investigator supports Baxter's testimony implying that it was an inside job because it appeared as though the robbers knew the innerworkings of the restaurant. Manning testified that he knew the closing procedures, and that the safe was always left open, the back door never shut properly, and only two people worked the closing shift because he previously worked that shift. With this knowledge that Manning provided, the robbers were able to walk in through the back door, proceed directly to the office where the safe was located, take the money, and leave. Thus, the statement by the corporate investigator reinforces the evidence presented at trial.

¶ 25    Additionally, the newly discovered evidence does not undermine this court's confidence in the trial verdict because the trial evidence overwhelmingly established defendant's guilt. Defendant admitted on cross-examination and redirect that he committed the robbery, and in doing so implicated Manning, Lavoy, and Spaulding. Notably, after admitting to the crime and implicating those involved, defendant does not implicate Delk or Milligan. Manning, who planned the robbery and provided the insider knowledge, admitted to the crime, and implicated the same

6

individuals as defendant. In fact, Davis was the only individual at trial that claimed Delk, or other Burger King employees had anything to do with the robbery. However, Davis's testimony was rebutted by his written statement, Baxter's rebuttal testimony, and at times Davis's own testimony. Additionally, Delk called police immediately after the robbery and informed them that he believed Manning was one robber. Manning explicitly stated that Delk, the individual who defendant argues betrayed Manning, was not involved. Moreover, there is no evidence presented at trial that establishes that Milligan was involved in the robbery.

¶ 26 Thus, considering the new evidence and the prior evidence presented at trial, there is no possibility that a fact finder would reach a different result at trial. Accordingly, the court properly dismissed defendant's postconviction petition.

¶ 27 III. CONCLUSION

¶ 28 The judgment of the circuit court of La Salle County is affirmed.

¶ 29 Affirmed.