NOTICE

Decision filed 08/08/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210202-U

NO. 5-21-0202

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Massac County. |
| | ) | |
| v. | ) | No. 98-CF-105 |
| | ) | |
| JEFFERY MORRISON, | ) | Honorable |
| | ) | William J. Thurston, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the defendant did not satisfy the "cause" prong of the cause-and-prejudice test, the circuit court did not err in denying him leave to file a successive postconviction petition, and since any argument to the contrary would lack merit, the defendant's appointed counsel on appeal is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    Defendant, Jeffery Morrison, appeals the circuit court's order denying leave to file a successive postconviction petition. The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit. Accordingly, OSAD has filed a motion to withdraw as counsel for the defendant (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)) along with a brief in support of the motion. OSAD has provided the defendant with a copy of its *Finley* motion and brief. Defendant has filed a response. Having read OSAD's *Finley* motion and brief and defendant's response, and having examined the record on

1

appeal, we agree that this appeal lacks merit and there is no potential ground for appeal. Accordingly, we grant OSAD leave to withdraw and affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4      Following a jury trial, defendant was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 1998)) and other offenses in the death of Roxanne Colley. The primary witness against defendant was his brother, Glen Morrison. Glen testified that he had lived with Colley and her twin boys for about a month prior to the shooting.

¶ 5      On October 23, 1998, defendant was visiting. Glen was in the living room when he heard an argument between defendant and Colley. Roxanne accused defendant of stealing a gun belonging at a friend. Defendant threatened to shoot her. Colley said that defendant did not have the nerve. Defendant pointed a gun at Colley and shot her in the back as she turned to leave.

¶ 6      Other witnesses at trial included Andrea McDonald, who was sitting in the front yard of her uncle's house when she heard what she thought was a door slamming and saw "Roxanne fly out the door." Colley was motionless at the bottom of her steps. Andrea began running toward Colley's house but was stopped by Robert Simmons, who said that what she heard was a gunshot. As she turned to run back away from the scene, she looked back to see defendant wiping off his hands with a white rag. Then he picked up Colley and carried her into the house.

¶ 7      Simmons testified that he was walking toward Doug McDonald's house when he saw a screen door open and heard a shot. The force of the shot "pushed her out the door." He saw Andrea approaching and stopped her. When he arrived at Doug McDonald's house, he saw a man come out of Colley's house, pick her up, and carry her back in the house. Simmons recognized the man as one of the Morrison brothers, but was not certain which one. He saw the car that was usually parked in the yard come out of the back alley. Two children were in the back seat.

2

¶ 8     Doug McDonald testified that he heard a gunshot, so he got on his bicycle and rode in the direction of the shot.  He saw the Morrisons come out, pick up the lady, and carry her back into the house.  The Morrisons came back out and got in the car, but one of them went back in the house and got the four-year-old twins and put them in the car.  McDonald heard one of the boys say, "Jeff shot my Mommy.  He shot her dead."  McDonald went inside the house and found Colley dead.

¶ 9     The rifle and shell casings produced no useable fingerprints.  Bruce Warren, a DNA expert, testified that blood on a shoe taken from defendant was Colley's.  Blood on jeans taken from defendant was a mix of Colley's and either defendant's or Glen's.  The jury found defendant guilty.  The trial court sentenced him to 40 years' imprisonment for murder, with concurrent sentences for the other convictions.

¶ 10    On direct appeal, this court, with some minor modifications, affirmed defendant's convictions.  *People v. Morrison*, No. 5-00-0054 (2002) (unpublished order under Supreme Court Rule 23).  Defendant filed a postconviction petition, which the circuit court summarily dismissed.  This court affirmed.  *People v. Morrison*, No. 5-03-0147 (2005) (unpublished order under Supreme Court Rule 23).

¶ 11    Defendant sought to file a successive postconviction petition.  The trial court denied leave to file and this court affirmed.  *People v. Morrison*, 2014 IL App (5th) 120036-U.

¶ 12    On March 19, 2021, defendant sought leave to file a second successive postconviction petition.  He alleged that trial counsel was ineffective in relying on the grand jury testimony of Detective Alan Burton that a Japanese 6.5-millimeter rifle would not produce testable gunpowder residue.  In response to a grand juror's inquiry, he said that the rifle "is a closed mechanism.  It's a bolt-action, closed mechanism."  Defendant alleged that in late 2019, "based on information

3

provided by a fellow prisoner," he began writing experts seeking assistance. As a result, he received a letter dated February 15, 2021, from Emanuel Kapelsohn of Peregrine Corporation asserting that a Japanese 6.5-millimter rifle does produce testable materials. Defendant asserted that he established cause for not raising this claim earlier because he could not have done so without Kapelsohn's letter.

¶ 13    Defendant alleged that he was prejudiced because "[a]n independent investigation into the presence or absence of gun powder residue or other by-products on Petitioner's clothing would have been conclusive evidence of whether or not he fired the rifle." Defendant asserted that such testing would have shown an absence of gunpowder residue (GSR), which would have supported his defense that he did not shoot Colley.

¶ 14    The circuit court denied leave to file the petition. The court found that defendant had not established cause because the facts underlying the claim were known to him before he filed his first postconviction petition and the State did not withhold anything from him. Defendant timely appealed.

¶ 15                                    ANALYSIS

¶ 16    OSAD asserts that the only potential issues defendant could raise are whether he should have been allowed to file a successive postconviction petition because he demonstrated the requisite cause and prejudice or whether he presented a viable claim of actual innocence. OSAD concludes that neither issue has even arguable merit. We agree.

¶ 17    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a statutory remedy for criminal defendants alleging substantial violations of their constitutional rights at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act contemplates the filing of only one petition. *People v. Coleman*, 2013 IL 113307, ¶ 81. Illinois courts permit the filing of

4

a successive postconviction petition only where fundamental fairness so requires. *Id.* Courts have recognized two such situations. The first is where the defendant establishes "cause and prejudice" for failing to raise the claim earlier. *Id.* ¶ 82. Second, even without a showing of cause and prejudice, a defendant may bring a claim of actual innocence to prevent a miscarriage of justice. *Id.* ¶ 83.

¶ 18 To establish "cause," a defendant must show that some objective factor external to the defense impeded his ability to raise the claim in the initial postconviction proceeding. *Id.* ¶ 82; 725 ILCS 5/122-1(f) (West 2016). To establish "prejudice," a defendant must show that the claimed constitutional violation so infected his trial that the resulting conviction violated due process. *Coleman*, 2013 IL 113307, ¶ 82; 725 ILCS 5/122-1(f) (West 2016).

¶ 19 Here, defendant knew the basic facts underlying his claim—*i.e.*, Burton's grand jury testimony—long before he filed his first postconviction petition. No "objective factor external to the defense" impeded his ability to raise the claim earlier. In other words, he points to no reason for not presenting the claim sooner other than his own failure to investigate it. That he learned in a fortuitous encounter with a fellow inmate more than 20 years after the shooting that Burton's testimony might have been inaccurate does not excuse his failure to investigate the issue sooner.

¶ 20 In any event, defendant cannot establish prejudice. He fails to explain how, even had defense counsel known that Burton's statement was arguably inaccurate, counsel could have challenged it. Burton did not testify at trial about the rifle's characteristic and the State presented no evidence of a GSR test (presumably because none was done). Counsel could not be expected to challenge evidence that was never offered at trial.

¶ 21 Defendant seems to suggest that counsel could have requested an independent test on the assumption that a negative test would have conclusively established his innocence. However, GSR

5

remains on skin or clothing for at most a few hours after a gun is fired. M. Trimpe, The Current Status of GSR Examinations, FBI Law Enforcement Bulletin, May 1, 2011 http://leb.fbi.gov/articles/featured-articles (accessed July 25, 2022). Moreover, it is easily removed by washing (*id.*), and Andrea McDonald saw defendant wiping his hands immediately after the shooting. A negative GSR test performed months or years after the shooting would have had no probative value in establishing defendant's innocence.

¶ 22 In any event, the evidence of defendant's guilt was overwhelming. His brother, Glen, witnessed the shooting. Three other eyewitnesses placed defendant at the scene immediately after hearing the shot, and the victim's blood was found on defendant's shoe. Moreover, even conclusive proof that defendant did not fire the fatal shot would not preclude a finding of guilt by accountability.

¶ 23 *People v. Johnson*, 401 Ill. App. 3d 685 (2010), which defendant's motion cites, is distinguishable. There, prior to trial, the State repeatedly downplayed the significance of fingerprint comparisons that excluded the defendant. Thus, the defendant's postconviction allegation that counsel relied on the prosecutor's assertion that there was " 'nothing conclusive about any of the fingerprints, and it was not really an issue' " stated at least the gist of a claim that counsel was ineffective. *Id.* at 695-97. Here, there was (so far as the record shows) no favorable report that counsel could have discovered, and, as noted, an independent test done long after the shooting would have proved nothing.

¶ 24 OSAD further concludes that defendant has not made a viable claim of actual innocence. To succeed on a claim of actual innocence, a defendant must present new, material, noncumulative evidence that is so conclusive that it would probably change the result on retrial. *People v. Coleman*, 2013 IL 113307, ¶ 96. "New" means that the evidence was discovered after trial and

6

could not have been discovered earlier through the exercise of due diligence. *Id.* "Material" means that the evidence is relevant and probative of the petitioner's innocence. *Id.* And "conclusive" means that the evidence, when considered along with the trial evidence, would probably lead to a different result. *Id.*

¶ 25 Here, Kapelsohn's statements about the characteristic of the rifle, in and of itself, do not tend to prove defendant's innocence. It suggests only that a GSR test could have been performed, but, as noted, a test performed long after the shooting would not have been probative. Therefore, defendant's claim cannot reasonably be construed as one of actual innocence.

¶ 26 In his response, defendant largely reiterates the arguments that he has established cause and prejudice. For the reasons stated, we disagree. Defendant alternatively asks that we stay the case so that he can pursue forensic testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2020)). However, that section requires that the testing have the potential to produce evidence that is "materially relevant" to an assertion of actual innocence. *Id.*; *People v. Savory*, 197 Ill. 2d 203, 213 (2001). As discussed above, a negative GSR test conducted more than 20 years after the shooting would have no probative value, and thus would not materially advance defendant's claim of innocence.

¶ 27                                    CONCLUSION

¶ 28 For the foregoing reasons, we grant OSAD's motion and affirm the circuit court's judgment.

¶ 29 Motion granted; judgment affirmed.