NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 220808-U

NO. 4-22-0808

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 21, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| MARTY BLACKMON, | ) | No. 04CF169 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's denial of defendant's motion for leave to file a successive postconviction petition claiming actual innocence, concluding (1) he did not meet his burden of showing newly discovered evidence and (2) assuming *arguendo* he did, the evidence presented would probably not lead to a different result.

¶ 2    Defendant, Marty Blackmon, appealed from the trial court's denial of his motion for leave to file a successive postconviction petition claiming actual innocence. We affirmed. *People v. Blackmon*, 2023 IL App (4th) 220808-U, ¶ 3.

¶ 3    On November 29, 2023, the supreme court denied defendant's petition for leave to appeal but directed this court to vacate our judgment in the case, reconsider this case in light of *People v. Coleman*, 2013 IL 113307, and *People v. Edwards*, 2012 IL 111711, on the issue of whether defendant met his burden of showing newly discovered evidence, and determine if a different result is warranted. In accordance with the supreme court's direction, we vacated our

prior judgment and reconsidered the trial court's order in light of *Coleman* and *Edwards*. Having done so, we again affirm.

¶ 4                                        I. BACKGROUND

¶ 5         On August 10, 2004, the State charged defendant by indictment with two counts of attempted first degree murder (720 ILCS 5/8-4, 9-1(a)(1) (West 2002)) and two counts of aggravated battery (720 ILCS 5/12-3(a)(1) (West 2002)) following an August 2003 attack on Allen Robinson, a fellow inmate at the Pontiac Correctional Center in Pontiac, Illinois (Pontiac). Defendant's codefendant, Robert Boyd, was alleged to have also participated in the attack.

¶ 6         On June 6, 2005, defendant pleaded guilty but mentally ill to all four counts of the indictment. In exchange, the State agreed the latter three counts merged into the first count of attempted murder and defendant's sentence should be capped at 30 years. According to the State's factual basis, defendant and Boyd concocted a scheme wherein they removed pieces of iron from the light fixtures in their cells, used them to dig through a concrete wall to reach Robinson's cell, and then used them to attack Robinson to the point of unconsciousness, causing serious injury.

¶ 7         The trial court found defendant understood the nature of the charges, the possible penalties, and the rights he was waiving. The court found defendant pleaded guilty voluntarily and there was a factual basis for his plea. However, the court refrained from formally accepting the plea until after it had a chance to review defendant's psychiatric and presentence investigation reports. Thereafter, the court formally accepted defendant's plea of guilty but mentally ill as to all four counts.

¶ 8         The trial court held the sentencing hearing on August 15, 2005. After summarizing the June 6, 2005, proceeding, the court noted it received defendant's motion to

withdraw his guilty plea filed on July 7, 2005. Defendant denied filing this motion, insisted someone else filed it on his behalf, denied any knowledge of it until receiving a copy of it, and expressed his desire to withdraw it. The court accordingly struck the motion. The court then sentenced defendant to a 30-year prison term, to run consecutively to his previously imposed sentences.

¶ 9        On December 8, 2005, defendant filed a *pro se* motion to withdraw his guilty plea, alleging his counsel was ineffective for (1) failing to inform the trial court of alleged perjury by a State witness at the August 2004 grand jury proceedings and (2) coercing defendant into pleading guilty despite the purported absence of a factual basis for his specific intent to murder. On December 12, 2005, the court struck the motion as untimely. Defendant appealed, and the Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal. Thereafter, OSAD moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). On March 1, 2007, this court granted OSAD's motion to withdraw, found the trial court properly dismissed defendant's motion as untimely, and dismissed his appeal. *People v. Blackmon*, No. 4-06-0019 (March 1, 2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10       On April 9, 2007, defendant filed a *pro se* postconviction petition, which he requested be voluntarily dismissed later that day. The trial court formally dismissed defendant's petition on April 19, 2007.

¶ 11       On April 23, 2007, defendant filed a new postconviction petition. Defendant's petition alleged his guilty plea was "involuntary and unintelligently induced" in that the trial court did not admonish him of the three-year period of mandatory supervised release and because he "did not understand the nature of his charges due to his mental health deterioration."

Additionally, defendant alleged his counsel was ineffective for, *inter alia*, not presenting an insanity defense.

¶ 12    On May 10, 2007, the trial court dismissed defendant's petition as frivolous and patently without merit. In doing so, the court found the petition to be "in the nature of a successive petition." Defendant appealed, and this court affirmed the dismissal but found the court erred in characterizing the petition as successive given defendant's voluntary dismissal of his postconviction petition on April 9, 2007. *People v. Blackmon*, No. 4-07-0429 (July 15, 2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 13    On January 31, 2022, defendant filed a motion for leave to file a successive postconviction petition, raising a claim of actual innocence. Specifically, defendant asserted:

> "[He] should be allowed a successive postconviction [petition], arguing that [he] is actually innocent of beating and stabbing, resulting in the attempt[ed] murder of Alan [*sic*] Robinson, and the affidavits of [Boyd] and [Christopher Knox,] another person incarcerated (formerly) to corroborate [Boyd's] statement that he alone committed the crime, and coerced [defendant] to go along with his plot, constitute evidence that is newly discovered, material, and noncumulative, and of such a conclusive character as would change the result of any retrial."

¶ 14    In his December 2021 affidavit, Boyd averred the following:

> "On or about August 22[,] 2003[,] I broke the bricks out of my wall leading from [Cell] 305 to 304, witch [*sic*] was occupied by [defendant]!

- 4 -

Upon going from my cell 305 into [defendant's] cell 304, I Robert Boyd told [defendant] to get out of my way & stay at the front of his cell or I'd kill him.

I Robert Boyd #B51078 then busted a hole in 303 & I told inmate (Robinson) to come fight me in [defendant's] cell 304. I knocke [*sic*] holes from my cell 305, 304, 303 & 2 Bricks out of *** 302 later that night.

At no time did [defendant] pick up a pice [*sic*] of steal [*sic*], bracke [*sic*] a light or hit or touch harm or do anything to Mr. Robinson at no time.

I Robert Boyd #B51078 am the only one who hit & beat Mr. Robinson who in [*sic*] August 22, 2003 was housed in 303, and came over to 304 to fight me & I beat & stabbed him sevral [*sic*] times & in the process I broke the light in 304 to get fresh steal [*sic*] to stab Mr. Robinson.

This whole incident took about 2 hours and some how [*sic*] it just came to my knowledge about 5-6 days ago Dec. 9th[,] 2021 upon seeing [defendant] for the 1st time & talking to him that he got 35 [*sic*] years for a crime he had no involvement with. I did it alone all's [*sic*] I did was told [defendant] get out my way or I'd kill him."

¶ 15 In his September 2020 affidavit, Christopher Knox averred the following:

"On March 7, 2018, I was transferred from [Pontiac] to Dixon C.C.

On or about March 10, 2018, I was placed on A-wing in X-house, and while on the wing in which Bobby Boyd was also housed, he and I talked about Pontiac. In particular, we talked about the incident that took place on 3 gallery in Pontiac.

- 5 -

He explained, that he and [defendant], was [*sic*] trying to go through the walls to get to the back-flag. Bobby told me that at some point they realized they couldn't get through all the walls. During this time, Smooth [(Allen Robinson)] said something to him and he did what he did to him.

Bobby stated, [defendant] came back and stopped him from killing Smooth. Bobby told me, he didn't want to say anything earlier because he didn't want to implicate himself and was trying to get off on the case."

¶ 16 According to defendant, (1) Boyd's affidavit could not have been discovered through the exercise of due diligence as (a) defendant had not seen Boyd in 18 years and (b) Boyd could not have been forced to waive his right against self-incrimination, (2) the information in the affidavit is material, and (3) the affidavit contradicts the State's evidence and exonerates him such that the result of his trial would have been different.

¶ 17 On March 9, 2022, the trial court denied defendant's motion for leave to file a successive postconviction petition, holding:

"Defendant contends that these affidavits are 'newly discovered evidence' that demonstrate his actual innocence. However, the facts set forth in Boyd's affidavit were not unknown to defendant at the time of his plea. Defendant knew Boyd was involved in the stabbing of Robinson at the time [defendant] chose to plead guilty. If defendant was actually innocent, he would have known that he did not act with Boyd back in 2005 when he chose to plead guilty. This is not a situation where Boyd refused to testify or otherwise pled the 5th Amendment [(U.S. Const., amend. V)] in connection with defendant's case. There was no trial and Boyd never

testified. Further, the most incriminating statements against defendant were not made by Boyd, but were made by the defendant himself. At no point in his successive [postconviction] petition does defendant explain or recant his detailed statements to [Illinois Department of Corrections (IDOC)] investigators concerning his knowledge and involvement in this incident."

¶ 18    On April 6, 2022, defendant filed a motion to reconsider the March 9, 2022, order, as well as an amended successive postconviction petition. The trial court denied defendant's motion to reconsider, finding he was improperly asking the court to "consider for the first time additional evidence not set forth in his original 1st Successive Post-Conviction Petition." The court also denied defendant's motion for leave to amend the successive postconviction petition, finding he "seems to abandon entirely his claim of actual innocence and instead pursues a claim of Equal Protection Clause violations for an allegedly disproportionate sentence."

¶ 19    This appeal followed.

¶ 20                            II. ANALYSIS

¶ 21    On appeal, defendant argues the trial court erred in denying his motion for leave to file his successive postconviction petition. Specifically, defendant contends the court erred because (1) Boyd's affidavit is "newly discovered evidence," (2) Boyd's affidavit contains "material and non-cumulative" information probative of defendant's innocence and creates new factual questions given the absence of anything in the State's factual basis suggesting Boyd attacked Robinson by himself, and (3) Boyd's affidavit is "of such conclusive character that it would probably produce a different outcome."

¶ 22　　　　　Generally, the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)), permits the filing of only one postconviction petition. *People v. Wilson*, 2023 IL 127666, ¶ 23. "To file a successive [postconviction] petition, a defendant must establish either (1) cause for not filing earlier and prejudice or (2) actual innocence." *People v. Walker*, 2022 IL App (1st) 201151, ¶ 19, 207 N.E.3d 1083. Here, defendant alleges actual innocence.

¶ 23　　　　　To set forth a claim of actual innocence:

> "[T]he supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. [Citation.] Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence. [Citation.] Evidence is material if it is relevant and probative of the petitioner's innocence. [Citation.] Noncumulative evidence adds to the information that the fact finder heard at trial. [Citation.] Lastly, the conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result. [Citation.]" *People v. Robinson*, 2020 IL 123849, ¶ 47, 181 N.E.3d 37.

"[T]he denial of leave to file a successive postconviction petition alleging actual innocence is reviewed *de novo*." *Robinson*, 2020 IL 123849, ¶ 40.

¶ 24　　　　　Evidence is not "newly discovered" when it "presents facts already known to a defendant at or prior to trial, though the source of these facts may have been unknown, unavailable or uncooperative." (Internal quotation marks omitted.) *People v. Snow*, 2012 IL App (4th) 110415, ¶ 21, 964 N.E.2d 1139. As the trial court noted, Boyd's and Knox's affidavits

contained facts purporting to reflect defendant's actual innocence, which defendant clearly would already have known when he pleaded guilty in June 2005. Defendant maintains Boyd's affidavit must be considered newly discovered evidence because the affidavit itself could not be procured sooner. Because defendant would have known the information contained in Boyd's affidavit at the time of his plea (*i.e.*, defendant did not commit the offenses), however, it cannot be considered "newly discovered." See *People v. Jones*, 399 Ill. App. 3d 341, 364, 927 N.E.2d 710, 729 (2010) ("An unbroken line of precedent holds that evidence is not newly discovered when it presents facts already known to a defendant at or prior to trial, though the source of those facts may have been unknown, unavailable or uncooperative.").

¶ 25        We note defendant's successive petition argues he was severely mentally ill at the time of the offenses and unable to recall details. Defendant maintains he told a psychiatrist in March 2005 that he had no memory of the incident and was going to "agree to whatever they say happened" only to get mental health treatment. However, his psychiatrist's report, which defendant attached to his successive petition, concludes that defendant's judgment was impaired on the date of the offenses, "but not to the extent that he was unable to appreciate the wrongfulness of his behavior." Moreover, it is clear defendant recalled the incident at the time he filed his April 2007 postconviction petition. In that petition, defendant complained of the "insufficiency of [the] indictment for charging [him] with crimes which did not coincide with the evidence [or] facts of the case." Defendant also complained his counsel "failed to present an insanity defense even in light of significant evidence indicating the probable success of such a defense." Thus, the record on appeal demonstrates the facts underlying defendant's actual innocence claim would have been known to him at the time he filed his first postconviction petition. *Snow*, 2012 IL App (4th) 110415, ¶ 21.

¶ 26    The foregoing analysis entails the application of the standard enunciated by this court in *Snow* to the issue of whether defendant met his burden of showing newly discovered evidence. As stated, we have been directed to consider the effect of *Coleman* and *Edwards* as to this issue, which we now do. For the following reasons, we find neither case dispositive because they are distinguishable.

¶ 27    In *Edwards*, the supreme court concluded affidavits from alibi witnesses submitted in connection with a successive postconviction petition claiming actual innocence contained information known to the defendant at the time of the trial and, thus, the affidavits "could have been discovered sooner through the exercise of due diligence." *Edwards*, 2012 IL 111711, ¶ 37. "[T]he evidence therefore was not newly discovered." *Edwards*, 2012 IL 111711, ¶ 37. However, as for an affidavit from a codefendant, Eddie Coleman, in which he stated he "did not come forward earlier because 'all [he] cared about was [his] freedom,' " (*Edwards*, 2012 IL 111711, ¶ 10), the court concluded:

> "While [the defendant] obviously knew of Eddie at the time of trial, the evidence in Eddie's affidavit apparently was nevertheless 'unavailable at trial' [citation], and the evidence thus qualified as newly discovered. Eddie was a codefendant, with a fifth amendment right to avoid self-incrimination. No amount of diligence could have forced him to violate that right if he did not choose to do so." *Edwards*, 2012 IL 111711, ¶ 38.

¶ 28    In *Coleman*, several uncharged witnesses to the underlying crime stated they would have invoked their fifth amendment right against self-incrimination if they were called to testify. *Coleman*, 2013 IL 113307, ¶ 102. Accordingly, the supreme court concluded "[t]he testimony of these witnesses was new evidence" in connection with their affidavits in support of

the defendant's successive postconviction petition claiming actual innocence. *Coleman*, 2013 IL 113307, ¶ 102.

¶ 29 "It is generally accepted that witnesses are deemed unavailable when *they* invoke their fifth amendment privilege against self-incrimination." (Emphasis added.) *People v. Rosalez*, 2021 IL App (2d) 200086, ¶ 107, 194 N.E.3d 929. Here, while Knox avers in his affidavit to having a conversation in March 2018 in which Boyd allegedly said he "did not want to say anything earlier because he didn't want to implicate himself and was trying to get off on the case," Boyd makes no such representation in his own affidavit. Unlike the case with the codefendant in *Edwards* or the uncharged witnesses in *Coleman*, it is not the case here that Boyd's fifth amendment right against self-incrimination was the reason for not providing his account of the incident at an earlier proceeding and that he could not have been forced by any amount of diligence to waive that right. In this regard, the record discloses no attempt defendant made to obtain this affidavit from Boyd for the initial postconviction petition in April 2007. Defendant exhibited no diligence at all to obtain this affidavit at that earlier stage. Accordingly, Boyd's affidavit does not constitute "newly discovered evidence" for purposes of a successive postconviction petition claiming actual innocence. See *People v. Fields*, 2021 IL App (1st) 191712-U, ¶ 80 (noting "the trial court rightly found that the Hopkins affidavit is not newly discovered evidence because defendant was with Hopkins the night of the shooting, and therefore knew or had reason to know that Hopkins may have had information related to his case," and "defendant[']s petition and affidavit do not indicate that he pursued Hopkins regarding this evidence," thereby reflecting "no effort to exercise due diligence even though he knew Hopkins could be a potential witness").

- 11 -

¶ 30　　　　　Assuming, *arguendo*, Boyd's affidavit is newly discovered evidence, it would also be "material and not merely cumulative." *Edwards*, 2012 IL 111711, ¶ 32. "Material means the evidence is relevant and probative of the petitioner's innocence." *Coleman*, 2013 IL 113307, ¶ 96. "Noncumulative means the evidence adds to what the jury heard." *Coleman*, 2013 IL 113307, ¶ 96. The factual basis for defendant's plea included the allegation he and Boyd concocted a scheme to harm Robinson. Boyd avers he alone committed the offense and defendant had no involvement in it, which is relevant to and probative of defendant's innocence. As defendant pleaded guilty, there was no trial before a jury; as a jury heard nothing in this case, the information in Boyd's affidavit would naturally "add[ ] to what the jury heard." *Coleman*, 2013 IL 113307, ¶ 96. Therefore, Boyd's affidavit would be material and noncumulative.

¶ 31　　　　　Consequently, we consider whether, assuming, *arguendo*, Boyd's affidavit satisfies the first two elements, it is of the requisite conclusive character in light of *Coleman* and *Edwards*. "The conclusive character of the new evidence is the most important element of an actual innocence claim." *People v. Robinson*, 2020 IL 123849, ¶ 47, 181 N.E.3d 37.

¶ 32　　　　　In *Edwards*, the supreme court noted that even though Eddie Coleman averred in his affidavit that the defendant had no involvement in the underlying crime, Eddie did not aver the defendant was not present when the crime occurred. *Edwards*, 2012 IL 111711, ¶ 39. As defendant was convicted of murder under a theory of accountability, the supreme court agreed with the appellate court that Eddie's affidavit would do little to exonerate the defendant. *Edwards*, 2012 IL 111711, ¶ 39. Thus, the court concluded Eddie Coleman's affidavit was not of the requisite conclusive character despite it being newly discovered. *Edwards*, 2012 IL 111711, ¶ 40. Consequently, the defendant failed "to raise the probability that it is more likely than not

that no reasonable juror would have convicted him in the light of the new evidence." *Edwards*, 2012 IL 111711, ¶ 41.

¶ 33 In *Coleman*, various witnesses to the underlying crime submitted affidavits in support of the defendant's second successive postconviction petition claiming actual innocence. *Coleman*, 2013 IL 113307, ¶ 49. The supreme court determined that while the testimony of certain witnesses at the hearing on the defendant's petition was "discredited" for various reasons, it "directly contradicted" that of other witnesses "on the ultimate issue before the jury: who was involved in the attack." *Coleman*, 2013 IL 113307, ¶ 113. The court believed "the evidence presented by the defendant at the evidentiary hearing, together with the evidence presented by the defendant at trial, places the evidence presented by the State in a new light and undermines [its] confidence in that evidence and the result it produced." *Coleman*, 2013 IL 113307, ¶ 113. The court found "the defendant's new evidence *** conclusive enough that another trier of fact would probably reach a different result." *Coleman*, 2013 IL 113307, ¶ 113. The court reversed the judgments of the trial court and appellate court and remanded for further proceedings. *Coleman*, 2013 IL 113307, ¶ 116.

¶ 34 Here, Boyd's affidavit is not of the requisite conclusive character because it would probably not lead to a different result. As with the affidavit of the codefendant in *Edwards*, Boyd's affidavit would do little to exonerate defendant. See *Edwards*, 2012 IL 111711, ¶ 39. And contrary to the affidavits and testimony of the witnesses in *Coleman*, Boyd's affidavit does not "place[ ] the evidence presented by the State in a new light and undermine[ ] [this court's] confidence in that evidence and the result it produced." *Coleman*, 2013 IL 113307, ¶ 113. Boyd averred defendant supposedly did not even touch Robinson. Yet this is presented in the face of significant evidence in the record implicating defendant in this incident.

¶ 35        As an exhibit to his December 2005 motion to withdraw his guilty plea, defendant

attached the transcript of the grand jury proceeding from August 2004, in which IDOC

investigator Michael McFadden testified regarding defendant's account of his involvement in the

incident, including his description of being in a "tussle" with Robinson, striking Robinson "at

least two to three times in the face with his fists," and admitting he "possibly" struck Robinson

with a piece of metal. Defendant also attached a portion of an IDOC investigative report

reflecting his statements about removing pieces of metal from the light fixtures, putting on

"combat gear," which included a "gas mask," punching Robinson's head with both of his closed

fists two to three times, and saying, "[W]e beat him down, but we didn't kill him." This report

also reflects the account of another inmate, who heard both Boyd and defendant beating

Robinson and continuing to hit him after he cried out for them to not kill him. Boyd's affidavit,

even if newly discovered, as well as material and noncumulative, does not "raise the probability

that it is more likely than not that no reasonable juror would have convicted him in the light of

the new evidence" (*Edwards*, 2012 IL 111711, ¶ 41) and is not "conclusive enough that another

trier of fact would probably reach a different result." *Coleman*, 2013 IL 113307, ¶ 113.

¶ 36        Boyd's affidavit did not constitute newly discovered evidence. Further, even

assuming, *arguendo*, the affidavit was both newly discovered evidence, as well as material and

noncumulative, it is not of the requisite conclusive character. Therefore, after considering the

case in light of *Edwards* and *Coleman*, we conclude the trial court did not err in denying

defendant leave to file a successive postconviction petition claiming actual innocence.

¶ 37                                III. CONCLUSION

¶ 38        For the reasons stated, we affirm the trial court's judgment.

¶ 39        Affirmed.