2025 IL App (1st) 230826-U

No. 1-23-0826

Order filed February 13, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 27061 |
| | ) | |
| LARRY STEELE, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse the circuit court's denial of defendant's *pro se* motion for leave to file a successive postconviction petition where defendant made a colorable claim of actual innocence based on newly discovered evidence.

¶ 2    Defendant Larry Steele appeals from the denial of his *pro se* motion for leave to file a successive petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)). On appeal, he asserts the circuit court erred where he set forth a colorable claim of actual innocence based on newly discovered evidence, namely, the affidavits of James Stokes and

Jerome Craft, who asserted someone other than defendant killed the victim. We reverse and remand.[1]

¶ 3      Following a jury trial, defendant was found guilty of first degree murder for the shooting death of Andre Dunlap and sentenced to 80 years in prison. The underlying facts were set forth in the decision on direct appeal and will be repeated here only briefly. *People v. Steele*, No. 1-07-2489 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 4      At trial, the eyewitness testimony of Lugene Shipp, Gerrod Smith, and Quincy Jones established that on October 6, 2004, at around 1:30 p.m., Shipp, Smith, Jones, and Dunlap were outside and encountered defendant and his brother, Morrell Steele.[2] More than 20 people were present. Defendant initiated a physical altercation with Dunlap. Morrell entered a house, retrieved a firearm, and handed it to defendant, who chased Dunlap while firing 9 to 12 shots at him. Afterwards, defendant entered the same house that Morrell had entered. While testifying, Jones invoked the fifth amendment when asked if he was armed that day.

¶ 5      The parties stipulated that Officer Gerald Ostafin administered a gunshot residue (GSR) test collection kit on defendant's hands on October 6, 2004, at 6:45 p.m. They also stipulated that Officer John Frank recovered one live round and three fired cartridge casings marked "nine millimeter Luger Wolf" from the scene.

¶ 6      Trace evidence analyst Robert Berk testified that he received the GSR test kit that had been administered to defendant. A positive test result for GSR includes at least three unique particles of lead, barium, and antimony and a population of consistent particles containing one or two of the

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal had been resolved without oral argument upon the entry of a separate written order.

[2]As Morrell Steele shares the same last name as defendant, we refer to Morrell by his first name.

elements but not all three. One unique particle and 44 consistent particles were recovered from the back of defendant's right hand and only consistent particles were found on his left hand. Tin, which could mask antimony, was also found in the particles from defendant's hands. This could mean the ammunition used had a high tin content or that particles from "some environmental source" defendant may have come into contact with contained tin. Wolf brand ammunition contains tin. Berk concluded that either defendant did not discharge a firearm or, if he did, the particles were removed by activity, not deposited, or not detected.

¶ 7 Police detective Thomas Vovos testified that he interviewed defendant. Defendant stated that he fought with Dunlap, Morrell handed defendant a firearm, and defendant fired "four or five" shots in Dunlap's direction. This statement was neither videotaped, audiotaped, nor written and signed by defendant.

¶ 8 The jury found defendant guilty of first degree murder. He was subsequently sentenced to an aggregate term of 80 years, which included 50 years for murder and a 30-year firearm enhancement.

¶ 9 This court affirmed on direct appeal. *Steele*, No. 1-07-2489 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10 On August 3, 2011, defendant filed *pro se* a postconviction petition alleging (1) trial counsel failed to pursue a self-defense theory and inform defendant that he had the right to testify, (2) a juror alerted the trial court after trial that she did not stand by the guilty verdict, and (3) appellate counsel failed to raise the above claims. The circuit court dismissed the petition as frivolous and patently without merit. This court affirmed. *People v. Steele*, No. 1-11-3451 (2013) (unpublished order under Illinois Supreme Court Rule 23).

¶ 11    On November 25, 2013, defendant filed *pro se* a motion for leave to file a successive postconviction petition alleging that he was denied due process due to the trial court's failure to conduct a fitness hearing and that trial counsel was ineffective for failing to seek a fitness hearing. The circuit court denied leave to file, finding defendant failed to establish cause and prejudice. This court affirmed. *People v. Steele*, No. 1-14-0358 (2015) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12    On August 17, 2016, defendant filed *pro se* a second motion for leave to file a successive postconviction petition alleging (1) the fitness hearing issues, (2) the State used perjured testimony, and (3) a juror admitted she felt pressured to find defendant guilty. The circuit court denied leave to file, finding the issues were barred by *res judicata* or were conclusory. This court affirmed. *People v. Steele*, No. 1-18-0193 (2020) (unpublished order under Illinois Supreme Court Rule 23).

¶ 13    On April 25, 2019, defendant filed *pro se* a third motion for leave to file a successive postconviction petition predicated on *People v. Coty*, 2018 IL App (1st) 162383, which held that those with intellectual disabilities should be treated similarly to minors for purposes of discretionary *de facto* life sentences. The circuit court denied leave to file as defendant did not show he suffered from an intellectual disability. This court affirmed. *People v. Steele*, No. 1-20-0449 (2021) (unpublished order under Illinois Supreme Court Rule 23).

¶ 14    On December 7, 2021, defendant filed *pro se* a fourth motion for leave to file a successive postconviction petition alleging actual innocence and other claims related to the allegedly perjured testimony of Jones. The circuit court denied leave to file, finding that defendant failed to establish actual innocence and his other claims lacked merit. This court affirmed. *People v. Steele*, 2023 IL App (1st) 220703-U.

¶ 15    On August 24, 2022, defendant filed *pro se* the instant fifth motion for leave to file a successive postconviction petition. Defendant alleged actual innocence based on newly discovered evidence premised on affidavits from James Stokes and Jerome Craft, who averred that someone other than defendant shot and killed Dunlap.

¶ 16    Stokes averred that on October 6, 2004, at around 1:15 p.m., he was outside with several people when Dunlap and defendant began to argue. Jones and "another guy," whom Stokes did not know, pointed and shot firearms at the crowd surrounding Dunlap and defendant. Defendant was not one of the shooters. Defendant fled and Stokes ran behind defendant. The next day, Stokes learned that Dunlap had passed away and defendant had been arrested for his murder. Stokes did not explain why he failed to come forward with this information when defendant was arrested.

¶ 17    Craft averred that on October 6, 2004, at around 1:30 p.m., he was outside and witnessed a group of men he had never seen before gesturing to a large group of people that included defendant. Two of the men drew firearms, a revolver and a semiautomatic, and shot at the crowd. Defendant was not one of the shooters. One man with a scar on his face gave another man his firearm, entered a van, and sped away. Craft then went to his cousin's house. The next day, Craft learned that defendant had been arrested for murder. Craft did not come forward to the police because he was only 14 years old at the time and was scared the men would retaliate.

¶ 18    Defendant also attached his affidavit, wherein he averred, in relevant part, that he argued with Dunlap before "people in the crowd" separated them. Defendant then observed Jones and another man "shooting towards us in the crowd." Defendant fled.

¶ 19    Defendant argued that Stokes's and Craft's evidence was newly discovered because he did not become aware of Stokes's or Craft's presence at the scene until 2022. He also argued that the

affidavits were material because they conflicted with trial evidence stating that defendant shot Dunlap. He further argued that the affidavits were conclusive because they established defendant's "overwhelming" innocence considering that no physical evidence linked defendant to the crime, defendant's GSR test was negative, and witnesses were impeached at trial.

¶ 20    In a written order entered on December 30, 2022, the circuit court denied leave to file finding that defendant failed to establish actual innocence. The court noted that the affiants could have been discovered through due diligence prior to trial. Also, the allegations in the affidavits could have been established through other witnesses on scene. Finally, the affidavits did not raise the probability of a different result upon retrial because they were rebutted by defendant's initial postconviction petition that alleged ineffective assistance of trial counsel for failure to raise self-defense. In that petition, defendant claimed he was scared of Dunlap, carried a firearm to protect himself, and shot at Dunlap in retaliation for Dunlap shooting at him.

¶ 21    Defendant filed a motion for leave to file a late notice of appeal, which this court allowed on May 12, 2023.

¶ 22    On appeal, defendant contends that the circuit court erred in denying his motion for leave to file his fifth successive postconviction petition where he raised a colorable claim of actual innocence based on newly discovered evidence, namely, affidavits from Stokes and Craft that asserted someone other than petitioner shot Dunlap.

¶ 23    The Act allows defendants to challenge their convictions based on an alleged violation of their state or federal constitutional rights. *People v. Jean*, 2024 IL App (1st) 220807, ¶ 28. The Act is not a substitute for an appeal and instead offers "a mechanism for a criminal defendant to assert a collateral attack on a final judgment." *People v. Robinson*, 2020 IL 123849, ¶ 42. Moreover, the

Act only contemplates the filing of one petition and "any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." *People v. Coleman*, 2013 IL 113307, ¶ 81; 725 ILCS 5/122-1(f), 122-3 (West 2022). This bar is relaxed under two grounds. *Robinson*, 2020 IL 123849, ¶ 42. The first ground applies when a defendant satisfies the cause-and-prejudice test for failure to assert a claim in an earlier postconviction petition. *Id.* The second ground is applied to avoid "a fundamental miscarriage of justice" when a defendant asserts a claim of actual innocence. *Id.* Here, defendant alleges actual innocence based on newly discovered evidence.

¶ 24    A defendant must obtain leave of court in order to file a successive postconviction petition premised on actual innocence. *People v. Edwards*, 2012 IL 111711, ¶ 24. A defendant must also "submit enough in the way of documentation" for a court to determine whether to grant a motion for leave to file. (Internal quotation marks omitted.) *Id.* Leave to file must be granted when a defendant's documentation raises the probability that "it is more likely than not that no reasonable juror would have convicted [the defendant] in the light of the new evidence." (Internal quotation marks omitted.) *Id.* Leave is denied only where "it is clear, from a review of the successive petition and the supporting documentation provided by the [defendant] that, as a matter of law, the [defendant] cannot set forth a colorable claim of actual innocence." *Id.*

¶ 25    At the pleading stage, "all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true" and the court must not engage in fact-finding or credibility determinations. *Robinson*, 2020 IL 123849, ¶ 45. A denial of leave to file a successive postconviction petition alleging actual innocence is reviewed *de novo*. *Id.* ¶ 40.

¶ 26    To establish actual innocence, evidence must be "(1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *Id*. ¶ 47. "Newly discovered" means evidence that was discovered "after trial and that the [defendant] could not have discovered earlier through the exercise of due diligence." *Id*. Material evidence is "relevant and probative of the [defendant's] innocence," and noncumulative evidence "adds to the information that the fact finder heard at trial." *Id*. Lastly, evidence is conclusive when "considered along with the trial evidence, [it] would probably lead to a different result." *Id*. Conclusiveness is the most important factor of an actual innocence claim. *Id*. Moreover, the requisite question is "whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id*. ¶ 48. Therefore, probability, not certainty, "is the key in considering whether the fact finder would reach a different result" after considering both the prior and new evidence. *Id*.

¶ 27    As conclusiveness is the most important factor of an actual innocence claim, we will address it first. See *People v. Anderson*, 2021 IL App (1st) 200040, ¶ 43.

¶ 28    Taking Stokes's and Craft's affidavits as true, there is a probability that a jury would reach a different result upon retrial. At trial, three eyewitnesses testified that defendant and Dunlap fought and then defendant shot Dunlap. Defendant's GSR test failed to yield a positive result and defendant's supposed confession to Vovos was not videotaped, audiotaped, or written and signed by defendant. Stokes's affidavit names Jones as one of the shooters and, at trial, when Jones was asked if he was armed that day, he invoked the fifth amendment. Stokes's and Craft's affidavits, which posit that someone other than defendant shot and killed Dunlap, place the trial evidence "in a different light," would have provided the jury with an alternative theory, and could have

"undermine[d] the court's confidence in the judgment of guilt" given the lack of physical evidence tying defendant to the crime. See *Robinson*, 2020 IL 123849, ¶ 48.

¶ 29 Stokes's and Craft's affidavits are also not positively rebutted by the trial record. While their evidence conflicts with eyewitness testimony elicited at trial, conflicting evidence is not the standard for determining whether new evidence is rebutted by the trial record, as such a requirement would be "fundamentally illogical." *Id*. ¶ 57. For new evidence to be positively rebutted, it must be "clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible." *Id*. ¶ 60. Here, it cannot be said that no finder of fact would accept Stokes's and Craft's affidavits as true. Therefore, if Stokes's and Craft's affidavits averring that someone other than defendant shot Dunlap are taken as true and considered in conjunction with the other evidence elicited at trial, there exists a probability that the evidence could lead to a different result upon retrial. *Id*. ¶ 48.

¶ 30 The State argues that the affidavits are positively rebutted by defendant's initial postconviction petition wherein he alleged ineffective assistance of counsel for failing to raise a self-defense theory at trial. In that petition, defendant alleged he was scared of Dunlap, carried a firearm to protect himself, and shot at Dunlap in retaliation for Dunlap shooting at him. As noted, however, evidence is conclusive when "considered along with the *trial evidence*, [it] would probably lead to a different result" and when it "places the *trial evidence* in a different light and undermines the court's confidence in the judgment of guilt." (Emphases added.) *Id*. ¶¶ 47-48. The State has not provided any authority for the proposition that prior postconviction petitions and proceedings are part of the trial record for purposes of determining whether newly-discovered

evidence is rebutted and lacks conclusiveness. Therefore, we do not consider Stokes's and Craft's affidavits to be rebutted by the evidence presented at trial for purposes of conclusiveness.

¶ 31    Furthermore, both affidavits are newly discovered. While Stokes failed to explain why he never came forward with the information in his affidavit when he learned of defendant's arrest, defendant stated in his petition that he did not become aware of Stokes's or Craft's presence at the scene until 2022. Craft averred that he was only 14 years old at the time of the shooting and was afraid of retaliation from the shooters if he came forward with the information in his affidavit. There is no indication that either Stokes or Craft were contacted by police or attorneys. If an "unknown, unobserved, and unrecorded witness chooses not to come forward, there is no amount of due diligence that can force him or her to come forward." *Anderson*, 2021 IL App (1st) 200040, ¶ 63. While we will not speculate as to whether defendant could or should have seen Stokes or Craft on scene, only the evidence in support of the actual innocence claim must be newly discovered, not the source. See *People v. Harris*, 2024 IL 129753, ¶ 58; *People v. Fields*, 2020 IL App (1st) 151735, ¶ 48. As no amount of due diligence would have produced Stokes and Craft as witnesses prior to trial, both affidavits constitute newly discovered evidence.

¶ 32    Lastly, the evidence set forth in the affidavits averring that defendant was not the shooter is both "relevant and probative of the [defendant's] innocence" and "adds to the information that the fact finder heard at trial," and is therefore material and noncumulative. As defendant has set forth evidence that is newly discovered, material and noncumulative, and conclusive, he has made a colorable claim of actual innocence in order to be granted leave to file his successive postconviction petition. *Robinson*, 2020 IL 123849, ¶ 47.

¶ 33    For the foregoing reasons, we reverse the judgment of the circuit court and remand with instructions that defendant be allowed leave to file his successive postconviction petition and his claim of actual innocence be advanced to second-stage proceedings.

¶ 34    Reversed and remanded.